UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MAKINA VE KIMYA ENDUSTRISI A.S., <br><br> *Plaintiff*, <br><br> v. <br><br> ZENITH QUEST CORPORATION, *et al.*, <br><br> *Defendants*. | Case No. 3:22-cv-00066 <br><br> MEMORANDUM OPINION <br><br> Judge Norman K. Moon |

This case is before the Court on Defendants' motion to dismiss Plaintiff's Complaint. Plaintiff Makina ve Kimya Endustrisi A.S., a Turkish company that manufactures firearms, has filed suit against Defendants Kutlay Kaya, Hanri Kaya, Zenith Quest Corporation, Zenith Quest International, Inc., Zenith Firearms, Inc., ZNT Global, and former Plaintiff employees. Plaintiff brings claims of violation of state and federal trade secret laws, conversion, state statutory business conspiracy, tortious interference with contract, and one they call, piercing the corporate veil. The Court will deny Defendants' motion to dismiss Plaintiff's claims of violation of state and federal trade secret laws, conversion, state statutory business conspiracy, and tortious interference with contract because Plaintiff has alleged sufficient facts to support these claims.

### I. Background

The following facts are alleged in Plaintiff's Complaint and assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (explaining standard of review).

Plaintiff is a Turkish company formed under the laws of Turkey, with its principal place of business in Turkey. Dkt. 1 ("Compl.") ¶ 11. Plaintiff is the leading provider of military

1

products in Turkey and exports its military products to more than 40 countries, including the United States. *Id*. ¶¶ 37, 38.

Defendant Kutlay Kaya ("Mr. Kaya") formed Zenith Quest International, LLC as a limited liability company organized under the laws of Virginia in 2010, and by 2014 it became Zenith Quest International, Inc. ("ZQI"). *Id*. ¶ 13. Defendants Zenith Quest Corporation ("ZQC"), ZQI, and Zenith Firearms, Inc. ("ZFI") are corporations organized under Virginia law that have their principal place of business in Virginia. *Id*. ¶¶ 12, 16, 18. Plaintiff asserts that ZFI and ZQI are wholly owned subsidiaries of ZQC. *Id*. ¶ 20. Defendant Mr. Kaya formed ZNT Global ("ZNT") under the laws of Turkey in 2015 with its principal place of business in Turkey. *Id*. ¶¶ 21, 22. Plaintiff asserts that ZNT is the Turkish arm of ZQC, and they work together to transact business in the United States. *Id*. ¶ 23. ZQI, ZQC, ZFI, and ZNT are collectively referred to as "Zenith."

Zenith engages in the production and sale of military products and directly competes with Plaintiff in the United States. *Id*. ¶ 43. However, from 2013-2019, Zenith and Plaintiff were in a business relationship where Zenith served as the exclusive distributor of Plaintiff's military products. *Id*. ¶ 44.

Plaintiff asserts that during the time that Zenith operated as Plaintiff's sole distributor, Zenith did not manufacture firearms of its own. *Id*. ¶¶ 82-84. But in 2019 their relationship terminated, and in 2021 Zenith began selling firearms manufactured by Zenith that bore a striking resemblance to the firearms Plaintiff was selling in the U.S. *Id*. ¶¶ 9, 83. The striking similarities between the firearms, and the short time frame in which Zenith went from selling Plaintiff's firearms to manufacturing and selling their own, prompted Plaintiff to begin an internal investigation into the possible misappropriation of Plaintiff's confidential information

concerning its firearms. *Id*. Plaintiff became suspicious that some of its current and former employees had misappropriated its trade secrets and confidential information regarding its firearms by giving the information to Zenith. *Id*. ¶ 85. Plaintiff asserts that the investigation led it to believe that for years Zenith had been misappropriating information from Plaintiff for the purpose of competition. *Id*. ¶ 86.

The following facts are significant regarding Plaintiff's assertion that some of its former employees misappropriated its confidential, proprietary, and trade secret information by delivering it to Zenith. Plaintiff asserts that Mr. Kaya and the director of ZNT approached Defendant Mr. Tokluoglu, a chief expert in Plaintiff's firearms division, and offered him a lucrative position with Zenith if he would recruit other Plaintiff employees to misappropriate Plaintiff's confidential, proprietary, and trade secret information and deliver it to Zenith. *Id*. ¶ 88. Plaintiff alleges that Mr. Tokluoglu agreed to participate and convinced several other employees of Plaintiff to join in the misappropriation. *Id*. ¶ 89. Plaintiff lists twelve of its former employees who left Plaintiff to work for Zenith, and alleges that other Plaintiff employees, whose names are not yet known, agreed to do the same. *Id*. ¶ 28. Each of these employees who left Plaintiff to work for Zenith informed Plaintiff that they were leaving due to retirement or some other reason unrelated to a new employment opportunity. *Id*. ¶ 99. At no point did any of these employees reveal to Plaintiff that they were leaving Plaintiff to work for Zenith. *Id*. ¶ 171. However, in October of 2022, while attending the Association of the United States Army Conference in Washington D.C., Plaintiff recognized several of its former employees representing *Zenith* at the conference. *Id*. ¶¶ 169-170.

Each employee who left Plaintiff to work for Zenith had a government security clearance to work with Plaintiff's confidential information and was required, by law, to keep such

confidential and trade secret information secret.[1] *Id.* ¶¶ 100-155. Further, each employee was required by law to obtain approval from Plaintiff's Board of Directors prior to working for any of Plaintiff's competitors. *Id.* However, none of the employees who left Plaintiff to work for Zenith obtained such approval. *Id.* ¶ 171. Plaintiff asserts that, because of their security clearances, the employees had access to large amounts of confidential, proprietary, and trade secret information. *Id.* ¶ 156.

Plaintiff conducted an investigation, which revealed that these employees had accessed Plaintiff's computer system and downloaded, copied, and/or printed confidential, proprietary, and trade secret information without Plaintiff's prior authorization before they left Plaintiff to go work for Zenith. *Id.* ¶¶ 158-163. Plaintiff further alleges that it only shares with each employee the confidential information specifically needed by that employee to carry out their individual responsibilities, thus there was no valid reason within the scope of their employment to access the information before they left; and further, Plaintiff's confidential information cannot be duplicated without authorization. *Id.* ¶¶ 157, 158, 160. Plaintiff's investigation also revealed that one or more of these employees had used their employment credentials to access Plaintiff's computer system after they had already ceased working for Plaintiff. *Id.* ¶ 162.

Plaintiff alleges that the confidential information taken, which includes Plaintiff's customer lists, technology vendors, and trade secret information on several of Plaintiff's weapons, was delivered to Zenith. *Id.* ¶¶ 164, 165. The investigation also revealed that molds for

---

[1] Plaintiff is owned by the Turkish Treasury and controlled by the Turkish Department of Defense, which requires, by Turkish law, that Plaintiff have security measures in place at its facilities to ensure the confidentiality of information regarding military products. Dkt. 1 ¶¶ 47, 48. Annually these security measures are inspected and approved by the Turkish Department of Defense. *Id.* ¶ 49. In addition, all of Plaintiff's employees that work with confidential information must obtain security clearance from the Turkish Department of Defense.

components, product designs, and production blueprints used to manufacture Plaintiff's firearms were missing from Plaintiff's factories. *Id.* ¶ 166. Plaintiff contends that these items were stolen and delivered to Zenith by one or more of the employees that left Plaintiff to work for Zenith. *Id.* ¶ 166.

According to Plaintiff, this misappropriation scheme is ongoing, and Plaintiff's current employees are still being recruited by Zenith, Mr. Kaya, and Hanri Kaya ("Mrs. Kaya") to steal Plaintiff's confidential, proprietary, and trade secret information and deliver it to Zenith. *Id.* ¶ 173.

Plaintiff further alleges that ZQC, ZFI, and ZQI are alter egos of Mr. and Mrs. Kaya, and ZNT is the alter ego of Mr. Kaya. *Id.* ¶ 214. Plaintiff contends that ZQC, ZQI, ZFI, and ZNT do not follow corporate formalities, they co-mingle assets, ZQC, ZQI, and ZFI are not maintained as distinct corporate entities, and at least ZQI and ZFI are undercapitalized. *Id.* Mr. Kaya is the chief executive officer and Mrs. Kaya is the chief financial officer of ZQC, ZQI, and ZFI. *Id.* ¶ 26. Plaintiff asserts that Mrs. Kaya routinely holds herself out as the chief executive officer of at least ZFI, though the Virginia Secretary of State records indicate she is not. *Id.* ¶¶ 26, 27.

Plaintiff filed suit against Defendants Mr. and Mrs. Kaya, ZQC, ZQI, ZFI, ZNT, and Plaintiff's former employees who left Plaintiff to work for Zenith ("Doe Defendants"), raising six claims. These include violation of federal and state trade secret laws, conversion, state statutory business conspiracy, tortious interference with contract, and one they call, piercing the corporate veil. Defendants seek dismissal of all counts pursuant to Rule 12(b)(6). The motion is ripe for disposition.

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The purpose

5

of a Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King*, 825 F.3d at 214 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)). "Thus, when considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020). Nevertheless, only facts can render a claim for relief plausible. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. The plaintiff must plead enough factual content to nudge a claim across the border from mere possibility to plausibility. *Id.* at 570. *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

### III. Analysis

#### A. Upon Information and Belief Allegations

Plaintiff's Complaint contains many facts that are alleged "upon information and belief." Defendants argue that the Complaint fails because every material factual allegation is premised solely upon "information and belief." Dkt. 19-1 at 5. The Court disagrees. Many material factual allegations are not based upon "information and belief." For instance, Plaintiff alleges that: Zenith began manufacturing and selling nearly identical firearms to the firearms produced by Plaintiff in a very short amount of time; an investigation by Plaintiff showed that confidential, proprietary, and trade secret information stored on Plaintiff's computer had been accessed and downloaded without authorization prior to the departure of Doe Defendants; one or more Doe Defendants used their credentials to access Plaintiff's computer system after they had ceased working for Plaintiff; molds for components, as well as product designs and production blueprints used to produce and manufacture Plaintiff's firearms were missing from Plaintiff's

factories; and Plaintiff saw several of its former employees representing Zenith while attending the AUSA conference in Washington, D.C. *E.g.*, Dkt. 1 ¶¶ 9, 159, 161, 162, 166, 169, 170.

Moreover, it is generally acceptable for a plaintiff to plead facts based "upon information and belief" if the plaintiff is "in a position of uncertainty because the necessary evidence is controlled by the defendant." *Drzymala v. Bae Sys. Controls, Inc.*, No. 7:21-cv-00522, 2022 WL 3971051, at *6 (W.D. Va. Aug. 31, 2022) (quoting *Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Va. 2015)). But "[a]llegations based upon 'information and belief' must be supported by secondhand information that provides the plaintiff a good-faith reason for believing it to be true." *Id*. (internal quotation marks omitted). Allegations made "upon information and belief" "veer away from supporting plausible inferences," when they are not grounded in specific facts. *Id*. (quoting *Carter v. Va. Dep't of Game & Inland Fisheries*, No. 7:21-cv-00522, 2018 WL 3614975 at *9 (E.D. Va. Aug. 31, 2018)).

Here, Defendants argue that in a prior lawsuit involving some of the same parties Plaintiff obtained more the 28,000 pages of discovery. Dkt. 19-1 at 3, 6. As a result, Defendants contend that Plaintiff should be precluded from arguing "upon information and belief" given the already established access to information. *Id*. at 6. However, this argument is unsuccessful for several reasons. Significantly, this case is based on different underlying allegations, raises different claims, and includes different parties than the prior litigation. The fact that Plaintiff received information in a previous litigation, centered on different allegations, does not automatically imply its possession of all, or even some, of the pertinent information required for this ongoing matter. Defendants have made no particular showing that the discovery received in the prior lawsuit provided Plaintiff with the information necessary and relevant to this lawsuit. It is more than plausible that Defendants could still be in possession of information material to this

case that Plaintiff does not have access to. Thus, Plaintiff's allegations made "upon information and belief" that are sufficiently supported by secondhand information are appropriate at this stage in the litigation.

### B. Plaintiff States a Plausible Claim that Defendants Misappropriated its Trade Secrets

Defendants have moved to dismiss Plaintiff's claim that they misappropriated Plaintiff's trade secrets, asserting that Plaintiff did not sufficiently plead that Defendants acquired, disclosed, or used specific trade secret information.

To assert a claim under the Federal Defend Trade Secrets Act ("DTSA"), a plaintiff must allege that: (1) it owns a trade secret, (2) the trade secret was misappropriated; and (3) the trade secret implicates interstate or foreign commerce. *Power Home Solar, LLC v. Sigora Solar, LLC*, No. 3:20-cv-00042, 2021 WL 3856459, at *23 (W.D. Va. Aug. 20, 2021). Similarly, Virginia Uniform Trade Secrets Act ("VUTSA") requires a plaintiff to establish that: (1) the information in question constitutes a trade secret; and (2) the defendant's misappropriation of the trade secret. *Id*. The Complaint successfully pleads facts that satisfy these elements.

First, Defendants protest that Plaintiff does not sufficiently identify a single document relating to a specific trade secret. Dkt. 42 at 4. The DTSA defines a "trade secret" as "financial, business, scientific, technical, economic or engineering information [including] designs, processes, [and] procedures" that "the owner thereof has taken reasonable measures to keep . . . secret." 18 U.S.C. § 1839(3). This information must also "derive[] independent economic value . . . from not being generally known . . . and not being readily ascertainable." *Id.* The VUTSA includes a substantially similar definition for "trade secret." *See* Va. Code Ann. § 59.1-336 (2020).

8

The Complaint satisfies the first element. The Complaint sufficiently pleads that the purported trade secrets contain both technical and engineering information. Dkt. 1 ¶¶ 57-63. The trade secrets include: "engineering drawings and three-dimension CAD drawings of the assembled firearm, component assemblies [which include] material specification, manufacturing process specifications . . . machine tooling, gauging . . .[and] assembly instructions." *Id*. In addition, Plaintiff alleges that Defendants took trade secrets relating to several specific weapons that Plaintiff lists by name in its Complaint. *Id*. ¶ 164. Moreover, Plaintiff sufficiently pleads that it took reasonable measures to keep this information secret. These measures include physical security around the facilities where the information is kept, required security clearance for employees working with confidential and trade secret information, labeling of confidential and trade secret information, limited access to facilities where confidential information is stored, and non-compete obligations, which require Board approval before working for a competitor. *Id*. ¶¶ 48-56. Plaintiff also sufficiently pleads that it derives value from these trade secrets. Plaintiff contends that the superior quality of the firearms it sells in the U.S. and abroad compared to those offered by Plaintiff's competitors provides it with a significant competitive advantage and economic value. *Id*. ¶¶ 65, 67. Additionally, the trade secrets include customer lists that guide product development and pricing strategies, thus they have independent economic value. *Id*. ¶¶ 74, 75.

Second, Plaintiff successfully pleads that Defendants "misappropriated" its trade secrets. The Act defines misappropriation as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or [] disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5). The "disclosure or use" category of misappropriation further requires that

the disclosure or user (i) "use improper means to acquire knowledge of the trade secret," (ii) know or have reason to know that the trade secret was acquired improperly, or (iii) know or have reason to know that the trade secret was "acquired by accident or mistake." *Id*. The VUTSA adopts substantially similar definitions. *See* Va. Code § 59.1-336.

Here, Plaintiff was prompted to begin an internal investigation into the possible misappropriation of its confidential information when Plaintiff discovered that Zenith was manufacturing firearms that were nearly identical to its firearms. Plaintiff alleges that the speed with which Defendants were able to bring the firearms to the market could only be done with Plaintiff's confidential information. Dkt. 1 ¶ 9. In support of this, Plaintiff contends that Zenith and Mr. and Mrs. Kaya were offering Doe Defendants lucrative salaries to leave Plaintiff and provide Zenith with Plaintiff's valuable trade secrets. *Id*. ¶¶ 88, 89. The investigation revealed that confidential, proprietary, and trade secret information stored on Plaintiff's computer system had been accessed by Doe Defendants both before and after they had ceased working for Plaintiff. *Id*. ¶¶ 159, 161, 162. And Plaintiff subsequently learned that a number of its former employees were now working for Zenith when it observed them representing Zenith at a conference in the U.S. *Id*. ¶¶ 169-171. These facts, taken as true, provide enough factual basis to support the contention that the trade secrets were acquired by improper means, thus satisfying the misappropriation element of this claim.

Finally, Plaintiff must show that the trade secrets implicate interstate or foreign commerce. This element is uncontested, and the Court finds the pleadings sufficient. Dkt. 41 at 15-16. Plaintiff's firearm designs concern firearms that are sold in foreign commerce, including NATO forces. *Id*. ¶ 178. Because Plaintiff has pled every element of its misappropriation of

trade secrets claim, the Court will deny Defendants' motion to dismiss Counts I and II of the Complaint.

### C. Plaintiff States a Plausible Claim for Conversion

Defendants allege that Plaintiff fails to plead sufficient facts to establish each element of conversion. Dkt. 19-1 at 16-17. The Court again, disagrees. Under Virginia law, the elements of conversion are "(1) the wrongful assumption or exercise of the right of ownership over goods or chattels, (2) that belong to another, (3) inconsistent with, or in denial of the owner's rights." *Michigan Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 923 (E.D. Va. 2000) (citing *Economopoulos v. Kolaitis*, 528 S.E.2d 714, 718 (Va. 2000)).

Regarding the first and second elements of the claim, Defendants argue that Plaintiff has not pled specific facts to establish what property was taken, who took the property, and who is exercising ownership over the taken property. Dkt. 19-1 at 16. However, Plaintiff directly alleges that "molds for components, as well as product designs and production blueprints used to produce and manufacture [Plaintiff's] firearms" were missing from Plaintiff's factories. Dkt. 1 ¶ 166. In addition, Plaintiff alleges that these items were stolen by one or more Doe Defendants and delivered to Zenith. *Id.* ¶ 166. Although Plaintiff pleads "on information and belief" that these items were stolen by Doe Defendants and delivered to Zenith, at the motion to dismiss stage, Plaintiff alleges sufficient other "specific facts" that "provide[] the [P]laintiff a good-faith reason for believing it to be true." *Drzymala v. Bae Sys. Controls, Inc.*, No. 7:21-cv-00522, 2022 WL 3971051, at *6 (W.D. Va. Aug. 31, 2022). For example, Plaintiff alleges that: Zenith began manufacturing nearly identical firearms to the firearms produced by Plaintiff in a very short amount of time, that during this time Plaintiff's employees were improperly leaving Plaintiff to work for Zenith, that one or more Doe Defendants improperly downloaded

11

confidential information from Plaintiff's computer, and Plaintiff saw several of its former employees representing Zenith at a conference in the U.S. that Plaintiff attended. Dkt. 1 ¶¶ 3, 9, 161, 169. These facts, taken as true, provide more than a sufficient "good-faith" reason for believing Plaintiff's assertion made "upon information and belief" that the molds, designs, and blueprints were taken by Doe Defendants and delivered to Zenith who is currently exercising ownership over them. Accordingly, Plaintiff has alleged enough facts to satisfy the first and second elements of this claim.

The third element of conversion requires a showing that the conversion was inconsistent with, or in denial of the owner's rights. *See Michigan Mut. Ins. Co.*, 128 F. Supp. 2d at 923. Plaintiff has sufficiently pled that these items were stored in a facility with physical security measures in place to ensure that the items would not be improperly taken. *Id.* ¶¶ 49, 166. Plaintiff exercised ownership over the molds, designs, and blueprints, and the alleged conversion of these items by Defendants was inconsistent with Plaintiff's ownership rights. For these reasons, the Court will deny Defendants' motion to dismiss Count III of the Complaint.

### D. Plaintiff States a Plausible Claim for Statutory Business Conspiracy

Plaintiff alleges that Zenith and Mr. Kaya are liable for violating Va. Code § 18.2-499, which states in relevant part: "Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatever" are liable for committing a business conspiracy.[2] As a consequence of Defendants' alleged conspiracy, Plaintiff asserts that it suffered damages. Dkt. 1 ¶ 198.

---

[2] Section 18.2-500 creates a private cause of action for parties injured under this statute, permitting them to recover treble damages.

Ultimately, Plaintiff must prove that the Defendants "combined together to effect a preconceived plan and unity of design and purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (internal quotation marks omitted). To survive a motion to dismiss, a plaintiff "must at least plead the requisite concert of action and unity of purpose," and must do so "in more than mere conclusory language." *Id*. (internal quotation marks omitted). *See Schlegel v. Bank of Amer., N.A.*, 505 F. Supp. 2d 321, 325–26 (W.D. Va. 2007).

The Defendants assert that Plaintiff's conspiracy claim contains only conclusory allegations and should not survive the motion to dismiss. Dkt. 19-1 at 18. This argument fails because Plaintiff's Complaint contains sufficient details that, taken as true, state a plausible statutory business conspiracy claim.

Plaintiff alleges in its Complaint that Mr. Kaya, with the assistance of the director of ZNT, approached Mr. Tokluoglu, a chief expert in Plaintiff's firearms division, and offered him a lucrative position with Zenith if he would recruit other Plaintiff employees to misappropriate Plaintiff's confidential information and trade secrets and deliver them to Zenith. Dkt. 1 ¶ 88. Plaintiff alleges that Mr. Tokluoglu agreed to the scheme and was successful in recruiting other Plaintiff employees to leave Plaintiff and deliver Plaintiff's confidential information to Zenith. *Id*. ¶ 89. These facts, taken as true, are sufficient to show that Mr. Kaya and Zenith "mutually undert[ook]" or "combined together" to "willfully and maliciously" injure Plaintiff in its "trade, business, or profession." Va. Code § 18.2-499. Accordingly, the Court will deny Defendants' motion to dismiss Count IV of the Complaint.

### E. Plaintiff States a Plausible Claim for Tortious Interference with Contract

Defendants allege that Plaintiff fails to plead sufficient facts to establish the first and fourth elements of its claim for tortious interference. The Court disagrees. A claim for tortious interference with contract in Virginia requires the following: (1) the existence of a contract expectancy; (2) the defendant knew of the expectancy; (3) the defendant intentionally interfered with the expectancy; (4) the defendant used improper means or methods to interfere with the expectancy; and (5) the plaintiff suffered damages as a result. *See Preferred Sys. Solns., Inc. v. GP Consulting, LLC*, 732 S.E.2d 676, 687-88 (Va. 2012) (citing *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 493 S.E.2d 375, 378 (Va. 1997)).

First, Defendants contend that Plaintiff cannot satisfy the first element which requires that the contract expectancy have a "probability of a future economic benefit" to Plaintiff. The Fourth Circuit has stated that "a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain the cause of action. Instead, a plaintiff must establish a probability of future economic benefit, not a mere possibility." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 228 (4th Cir. 2004) (citing *Com. Bus. Sys., Inc. v. Halifax Corp.*, 484 S.E.2d 892, 897 (Va. 1997)) (internal quotation marks omitted).

Defendants argue that "the mere fact that employment contracts between [Doe Defendants] and [Plaintiff] may have existed sometime in the past is insufficient to establish a probable economic benefit." Dkt. 19-1 at 19. However, this contention fails to consider numerous allegations set forth by Plaintiff that establish more than a mere past employment relationship. First, Plaintiff alleges that it had valid employment agreements with Doe Defendants that prohibited them from disclosing Plaintiff's confidential information. Dkt. 1 ¶ 200. Further, the agreements included a non-compete obligation that required its

employees to get Board approval before working for a competitor, which they did not do. *Id.* ¶¶ 171, 200. Second, Plaintiff alleges that it had a business expectancy with Doe Defendants that they would abide by Turkish law, which required that they not improperly disclose Plaintiff's confidential, proprietary, and trade secret information. *Id.* ¶ 201.[3] Third, and finally, Plaintiff contends that "[it] had a business expectancy that [Doe Defendants] would continue working for [Plaintiff]." *Id.* ¶ 202. Taking these allegations as true, Plaintiff has established that it had an ongoing expectation that Plaintiff and Doe Defendants' business relationships would continue, and certainly that Doe Defendants would not leave Plaintiff to go work for its competitor. These allegations provide enough support that Plaintiff's business relationships with Doe Defendants had the probability of "future economic benefit to [Plaintiff]." *See Am. Chiropractic*, 376 F.3d at 228.

Second, Defendants assert that Plaintiff has not satisfied the fourth element which requires the use of improper means or methods to interfere with the expectancy.[4] Plaintiff alleges that "Zenith and Mr. Kaya knew that [Doe Defendants] were prohibited by Turkish law from working for competitors of [Plaintiff]," yet they still induced, through lucrative

---

[3] Defendants argue that Turkish law has no bearing on Plaintiff's claims. Dkt. 42 at 9-10. In this instance, Plaintiff has alleged sufficient facts to support its claim that there was a probability of future economic benefit apart from the argument that Turkish law prohibits disclosure of confidential information. Moreover, because Plaintiff is located in Turkey, controlled by Turkey's Department of Defense, Doe Defendants were employed by Plaintiff in Turkey, and ZNT is organized under the laws of Turkey, these facts render it plausible that Doe Defendants were under a duty of nondisclosure under Turkish law.

[4] Defendants assert that, contrary to Plaintiff's allegations, "[Plaintiff] already possess Defendants' financial records, including payroll information, and has documented evidence that Defendants did not offer twenty former Plaintiff employees lucrative salaries." Dkt. 19-1 at 19. This contention fails to consider that "when considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020).

15

salaries and other incentives, "one or more [Doe Defendants] to stop working for [Plaintiff]." Dkt. 1 ¶¶ 203, 205. In addition, Doe Defendants were prohibited from working for any of Plaintiff's competitors without prior Board approval. *Id*. ¶ 200. The Complaint alleges that Doe Defendants did not obtain such approval. *Id*. ¶ 171. These facts, taken as true, provide enough support to believe that Defendants employed improper methods in causing the alleged interference, thus, satisfying the fourth element of this claim. Accordingly, because Plaintiff has pled enough facts to satisfy the disputed first and fourth elements, the Court will deny Defendants' motion to dismiss Court V of the Complaint.

### F. Plaintiff's Piercing the Corporate Veil Claim

Plaintiff has brought a separate cause of action of piercing the corporate veil against Mr. and Mrs. Kaya. Plaintiff alleges that given the damaging acts of Mr. and Mrs. Kaya, through Zenith, Mr. and Mrs. Kaya should "have no immunity from liability to the extent that they have acted as an agent, officer, director, manager, member, or owner of ZQC, ZFI, ZQI, and ZNT." Dkt. 1 ¶ 217. And, as a result, the corporate veil should be pierced, and Mr. and Mrs. Kaya should be held personally liable for the acts of Zenith. *Id*.

However, "[p]iercing the corporate veil is not an independent cause of action." *Shearson Lehman Hutton, Inc. v. Venners*, No. 97-1849, 1998 WL 761505 *2 (4th Cir. Nov. 2, 1998) (unpublished). Rather, it is a "method of imposing liability on an underlying cause of action." *Id*. Accordingly, the Court considers that it would be more appropriate to decide this issue when there are more developed facts and a fulsome record. This issue would be more appropriately raised at the summary judgement stage or trial. Thus, the Court will not rule on the issue at this time.

### G. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss will be denied. The Clerk of Court is directed to send this Memorandum Opinion to the parties.

Entered this 7th day of August, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE