IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| MAKINA ve KIMYA ENDUSTRISI A.S., | ) | |
| Plaintiff | ) | Civil Action No. 3:22-cv-00066 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| ZENITH QUEST CORP. et al., | ) | By:  Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

The parties to this action used to be partners in the military-grade-firearms industry. *See* Compl. ¶¶ 37–40, 44–46, 85 ECF No. 1. They are now direct competitors. *Id.* ¶ 3. As relevant here, Plaintiff Makina ve Kimya Endustrisi A.S. ("MKE") is suing Defendants Zenith Quest Corporation, Zenith Quest International, Inc., Zenith Firearms, Inc., ZNT Global, Kutlay Kaya, Hanri Kaya, and Does 1–20[1] for misappropriating MKE's trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the Virginia Uniform Trade Secrets Act ("VUTSA"), Va. Code § 59.1-336. *See* Compl. ¶¶ 174–82, 183–87; *see generally Makina ve Kimya Endustrisi A.S. v. Zenith Quest Corp.*, No. 3:22cv66, 2023 WL 5019525, at *4–5 (W.D. Va. Aug. 7, 2023) (Moon, J.) (denying Zenith's Rule 12(b)(6) motion to dismiss DTSA and VUTSA claims). The matter is now before the Court on the parties' cross motions to compel discovery responses under Rule 37(a) of the Federal Rules of Civil Procedure. Pl.'s Mot. & Br. in

---

[1] The Doe Defendants are twenty former MKE employees whom MKE believes stole MKE's proprietary, confidential, and trade-secret information, left their jobs at MKE under false pretenses, and then delivered MKE's trade secrets to Zenith so Zenith could manufacture its own firearms to improperly compete with MKE. *See generally* Compl. ¶¶ 28, 156–71. MKE's motion to compel, ECF No. 116, is directed towards Defendants Zenith Quest Corporation, Zenith Quest International, Zenith Firearms, ZNT Global, Kutlay Kaya, and Hanri Kaya. Pls.' Mot. & Br. in Supp. 1. The parties generally refer to those six Defendants simply as "Zenith." *See* Defs.' Br. in Opp'n 1 n.1, ECF No. 120; Pl.'s Reply 1, ECF No. 124. I will do the same.

Supp., ECF No. 116; Defs.' Mot., ECF No. 117. Zenith's motion also seeks a protective order

under Rule 26(c)(1). *See* Defs.' Mot. 1, 3.[2]

## I. Summary

The parties' motions present six separate discovery disputes, three of which overlap to

some degree. *See generally* Pl.'s Mot. & Br. in Supp. 9–20; Defs.' Mot. 1–3. The overlapping

disputes relate to a growing trend in federal district courts to require a trade-secret plaintiff to

identify its alleged trade secrets at issue with "reasonable particularity" before the plaintiff can

compel its adversary to produce its own trade secret information. Zenith concedes that MKE's

requests cover "some of [Zenith's] own trade secret information [which] may potentially be

relevant to this litigation and, therefore, discoverable" under Rule 26(b)(1). Defs.' Br. in Supp. 6,

ECF No. 117-1. "Zenith has refused to produce its own trade secret information because the law

requires MKE to identify with reasonable particularity its specific trade secrets at issue in this

litigation." Defs.' Br. in Opp'n 1, ECF No. 120. MKE agrees that the "reasonable particularity"

standard governs discovery disputes in trade-secret litigation, but makes various arguments why

the standard either does not apply here, or why MKE satisfied it before the parties filed these

motions. *See generally* Pl.'s Mot. & Br. in Supp. 1–15.

*First*, MKE argues that Zenith waived any "reasonable particularity" objection with

respect to MKE's RFP Nos. 10–28 by failing to specifically raise the objection in its August 18,

2023 responses to MKE's first set of RFPs. *See* Pl.'s Mot. & Br. in Supp. 9–10; Pl.'s Reply 10–

11, ECF No. 124. MKE seeks an order compelling Zenith to produce any materials responsive to

RFP Nos. 10–28, "including any and all MKE technical data packages, portions thereof, and/or

molds." Pl.'s Mot. & Br. in Supp. 19 (parentheses omitted). Zenith counters that it raised this

---

[2] Pinpoint citations to documents filed on CM/ECF use the blue page numbers printed in the header and
the exhibit labels assigned by the filing party.

issue in a general objection to MKE's first set of RFPs and, even if it did not, the Court can excuse the failure. Defs.' Br. in Opp'n 9.

*Second*, both parties ask the Court to decide if MKE has produced enough information to identify with "reasonable particularity" which trade secrets MKE actually accuses Zenith of misappropriating. *See generally* Pl.'s Mot. & Br. in Supp. 1–15; Defs.' Br. in Opp'n 1–8; Defs.' Br. in Supp. 5–8, 12–14; Pl.'s Br. in Opp'n 1–11, ECF No. 118. MKE primarily argues that the "trade secrets" described in its Complaint, ECF No. 1; Vice President Servet Akkaynak's declaration, ECF No. 3-1; and instructions to MKE's first set of RFPs, ECF No. 116-1, at 6–7, satisfy this standard.[3] *See* Pl.'s Mot. & Br. in Supp. 8, 10–13 (citing Compl. ¶¶ 57–58, 68; Akkaynak Decl. ¶¶ 7, 11; Pl.'s Mot. Ex. 1, ¶ 8); Pl.'s Br. in Opp'n 5–8. Zenith counters that those materials describe "broad categories of trade secrets" that are "too vaguely defined" for Zenith or the Court to determine *which* "trade secrets MKE is attempting to litigate." Defs.' Br. in Supp. 2; *see also* Defs.' Br. in Opp'n 4–5; Defs.' Reply 1–3, ECF No. 123. This dispute concerns MKE's answers to Zenith's Interrogatory Nos. 8, 11, 19, and 20, and Zenith's subsequent response to MKE's Interrogatory No. 23. *See* Pl.'s Mot. & Br. in Supp. 6–8; Defs.' Br. in Supp. 5–6, 8–9, 12–14; Pl.'s Br. in Opp'n 5–11. Zenith seeks an order "compelling MKE to submit a particularized list of trade secrets that MKE has a good faith basis to believe have been misappropriated by Zenith" and to "adequately respond to [Zenith's] interrogatories." Defs.' Mot. 3, ¶¶ 1–2. Conversely, MKE seeks an order compelling Zenith to answer Interrogatory No. 23 without requiring MKE to provide any more information about its alleged trade secrets at issue. *See* Pl.'s Mot. & Br. in Supp. 19, ¶ 1.

---

[3] All three documents contain essentially the same description of MKE's alleged trade secrets. *Compare* Compl ¶¶ 57–81 (describing "MKE's Confidential Information and Trade Secrets"), *with* Akkaynak Decl. ¶¶ 7–11 (describing "the 'MKE Trade Secrets'" as used in the declaration), *and* Pl.'s Mot. Ex. 1, ¶ 8 (defining "[t]he term 'MKE Information'" as used in MKE's first set of RFPs).

*Third*, Zenith seeks an order "protecting Zenith from disclosing its own proprietary and/or trade secret information until MKE has submitted a particularized list of its trade secrets at issue, and limiting Zenith's disclosure to information that is relevant to the identified trade secrets." Defs.' Mot. 3, ¶ 3; *see* Fed. R. Civ. P. 26(c)(1)(G). Zenith is withholding nonprivileged materials responsive to MKE's RFP Nos. 24–25 and 40–41, which seek information related to the development, design, and manufacturing of Zenith's ZF-5 firearm and forthcoming ZF-56 firearm. *See* Defs.' Br. in Supp. 18–20; Pl.'s Mot. & Br. in Supp. 1–4, 6, 8 n.6, 16.

MKE suspects Zenith is also withholding documents responsive to its RFP Nos. 10–23, 26–28, and 42–46 "based solely on the specious assertion that [MKE] has not sufficiently identified the trade secrets at issue." Pl.'s Mot. & Br. in Supp. 5; *see generally id.* at 5–9, 19. About half of those requests seek "MKE Information," Pl.'s Mot. Ex. 1, ¶ 8, which MKE argues goes to the heart of its misappropriation claims. *See* Pl.'s Mot. & Br. in Supp. 3, 12–14, 18; Pl.'s Br. in Opp'n 8–10; Pl.'s Reply 4–6. Zenith says that it "has not withheld any *MKE Information* as a result of Zenith's objections." Defs.' Reply 7. It already "produced the documents and communications in its possession that contain MKE information." *Id.* Zenith is withholding potentially relevant "documents that constitute *its own* proprietary, trade secret information . . . and communications discussing design and process choices." *Id.* (emphasis added). Zenith seeks an order protecting it "from disclosing this information to MKE—a direct competitor—until Zenith has reviewed what MKE specifically identifies as its own trade secrets misappropriated by Zenith." *Id.* That way, Zenith can limit its production to "trade secret information that is relevant to MKE's alleged trade secrets." *See id.* MKE does not dispute Zenith's claims about what Zenith has produced, or what Zenith is prepared to produce once MKE more specifically identifies the trade secrets at issue. *See generally* Pl.'s Br. in Opp'n 1, 9–10, 12–14. Instead,

4

MKE argues that Zenith has not shown good cause under Rule 26(c)(1) because MKE already identified its alleged trade secrets with "the requisite particularity" and the existing protective order negates Zenith's "feigned confidentiality concern." *See id.* at 12 (citing ECF No. 91).

*Fourth*, the parties contest the proper scope of discovery into Zenith's "ZF" line of firearms. *See* Pl.'s Mot. & Br. in Supp. 15–16; Defs.' Br. in Opp'n 8; Pl.'s Reply 9; Defs.' Br. in Supp. 11–12. Zenith argues that discovery should be limited to information about its ZF-5 and ZF-5P firearms because those are the only Zenith-made weapons mentioned in the Complaint. Defs.' Br. in Opp'n 2, 8, 12; *see* Compl. ¶¶ 83–85. MKE responds that it is entitled to discover all information about "the design, development, and manufacture of Zenith's ZF-series weapons" generally, including its forthcoming ZF-56, because Zenith announced the ZF-56 after MKE filed this lawsuit. Pl.'s Mot. & Br. in Supp. 15–16; *see* Pl.'s Reply 9. This dispute concerns MKE's RFP Nos. 40–46 and Zenith's specific objections that its ZF-56 firearm is not relevant to any fact or claim asserted in MKE's Complaint. Pl.'s Mot. Ex. 3, at 4–8, ECF No. 116-3; *see* Pl.'s Mot. & Br. in Supp. 15–16; Defs.' Br. in Opp'n 8, Pl.'s Reply 8.

*Fifth*, Zenith contends that MKE failed to produce, or failed to respond that it would produce, documents relevant to the essential elements of MKE's misappropriation claims and Zenith's defenses thereto, as Zenith requested in at least 20 different RFPs. *See* Defs.' Br. in Supp. 9–10 (citing RFP Nos. 3, 5–8, 11, 14–16, 18–20, 27–28, 43–44); *id.* at 15–17 (also citing RFP Nos. 36, 39–40, 47–51). Several RFPs seek categories of documents and other items referenced in MKE's Complaint or Mr. Akkaynak's declaration. *See id.* at 15–17 (citing Compl. ¶¶ 49, 52, 73, 79; Akkaynak Decl. ¶¶ 15, 21–23, 27–31, 33, 35–36); Defs.' Reply 4–5 (also citing Compl. ¶¶ 50, 53–54, 176–77, 184). MKE responds that it produced documents responsive to nine of those RFPs and it already told Zenith that MKE "is not withholding any responsive

documents returned by [ESI] searches" for five others. *See* Pl.'s Br. in Opp'n 14–15 (citing RFP Nos. 6–8, 11, 14–15, 18–20, 27–28, 44). MKE also agreed to search for and produce documents responsive to RFP Nos. 16 and 43 before Zenith filed its Rule 37 motion. *Id.* at 15. Thus, MKE contends that "there is nothing to compel." *Id.* MKE's brief does not address Zenith's RFP Nos. 5, 39–40, or 48–51. *See id.* at 14–15; Defs.' Reply 3–6.

*Sixth*, MKE asserts that Zenith failed to produce text messages responsive to any of MKE's RFPs. Pl.'s Mot. & Br. in Supp. 17–19. This includes text messages connected to cell phones belonging to Kutlay (Peter) Kaya, Hanri Kaya, Bahadir Hamanci, and Mehmet Tokluoglu. *Id.* at 19. Zenith concedes this failure and promises to supplement its production with all responsive, nonprivileged WhatsApp messages from any of these four individuals' phones. Defs.' Br. in Opp'n 13; *see also* Pl.'s Mot. & Br. in Supp. 19. There is also a dispute over ESI from cell phones that Zenith issued to ten Former MKE Personnel, but that have since been returned to the wireless provider. *See* Pl.'s Mot. & Br. in Supp. 17–19; Defs.' Br. in Opp'n 13; Pl.'s Reply 14–15.

Finally, Zenith seeks to recover its reasonable expenses incurred in making its combined motion to compel and for a protective order. Defs.' Mot. 3, ¶ 4 (citing Fed. R. Civ. P. 37(a)(5)); *see* Fed. R. Civ. P. 26(c)(3), 37(a)(5). MKE's motion to compel does not seek a court order awarding MKE its expenses under Rule 37(a)(5). Pl.'s Mot. & Br. in Supp. 19–20, ¶¶ 1–5 (requested orders); *see* Fed. R. Civ. P. 7(b)(1)(A)–(C). MKE does make this request in the last sentence of its opposition brief, Pl.'s Br. in Opp'n 16 (citing Fed. R. Civ. P. 37(a)(5)), but the request is not accompanied by any motion that complies with Rule 7(b)(1). *See Cozzarelli v. Inspire Pharmas. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (noting that a party's requests for a court order raised only in its opposition briefs "did not qualify as motions" under Rule 7(b)).

The motions have been fully briefed, *see* ECF Nos. 116, 117-1, 118, 120, 123, 124, and argued, ECF No. 131. For the reasons that follow, MKE's motion to compel, ECF No. 116, will be granted in part with respect to any responsive text messages in Zenith's possession, custody, or control, and denied without prejudice in all other respects. Zenith's motion to compel and for a protective order, ECF No. 117, will be granted in its entirety, but the Court declines to award expenses under Rule 26(c)(3) or Rule 37(a)(5). More specifically:

- Zenith will have **21 days** from the date of this Order to produce copies of all responsive, nonprivileged electronic messages from any phones belonging to Kutlay (Peter) Kaya, Hanri Kaya, Bahadir Hamanci, and/or Mehmet Tokluoglu.

- Zenith waived its "reasonable particularity" objections to MKE's RFP Nos. 10–28, as applicable, but the Court finds good cause not to enforce the waiver in this case. Those objections are sustained.

- MKE will have **21 days** from the date of this Order to amend its answers to Zenith's Interrogatory Nos. 8, 11, 19, and 20, and to produce any nonprivileged documents responsive to Zenith's outstanding RFPs.

- MKE's counsel will have **21 days** from the date of this Order to give Zenith's attorney "a particularized list of trade secrets that MKE has a good faith basis to believe have been misappropriated by Zenith." Defs.' Mot. 3, ¶ 1. The Court provides guidance concerning the level of specificity with which MKE must identify its alleged trade secrets in Section IV.B.2 below.

- Zenith will have **21 days** from the date its attorney receives MKE's particularized list of allegedly misappropriated trade secrets to answer MKE's Interrogatory No. 23, and to produce any additional nonprivileged documents responsive to MKE's RFP Nos. 10–28, as applicable, and to MKE's RFP Nos. 40–41, as modified by this Order.

- The Court sustains Zenith's relevancy objections to MKE's RFP Nos. 40–46. Zenith is not required to produce any requested materials related solely to its forthcoming ZF-56 firearm.

- Zenith will bear its own costs incurred in bringing its motion, ECF No. 117.

Additionally, the parties must continue to supplement or correct their interrogatory answers and document productions in accordance with Rule 26(e)(1). *See* Fed. R. Civ. P. 37(c).

## II. The Legal Framework

Rule 26(b)(1) limits the scope of all civil discovery "in two fundamental ways." *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) (citing Fed. R. Civ. P. 26(b)(1)). "First, the matter sought must be 'relevant to any party's claim or defense.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). Relevance turns on whether the matter logically relates to a claim, defense, or fact "already asserted in the pleadings," Fed. R. Civ. P. 26(b)(1), advisory committee's note to 2000 amendment. *See, e.g.*, *In re: Am. Med. Sys., Inc.*, MDL No. 2325, 2016 WL 3077904, at *4 (S.D. W. Va. May 31, 2016) ("Certainly, information is relevant if it logically relates to a party's claim or defense."); *United Oil Co., Inc. v. Parts Assocs.*, 227 F.R.D 404, 416 (D. Md. 2005) ("The focus of the 2000 amendments to Rule 26 on the specific claim or defense alleged in the pleadings does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact. On the other hand, that does not mean, of course, that discovery is limitless." (cleaned up)). Second, "discovery must also be 'proportional to the needs of the case.' Proportionality requires courts to consider, among other things, 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Jordan*, 921 F.3d at 188–89 (quoting Fed. R. Civ. P. 26(b)(1)). As a general rule, the party resisting discovery— whether on its own motion for a protective order or in opposition to a motion to compel—bears the burden to persuade the court "that a discovery request exceeds the broad scope of allowable discovery." *Patrick v. Teays Valley Tr., LLC*, 297 F.R.D. 248, 256 (N.D. W. Va. 2013); *see Webb v. Green Tree Servicing*, 283 F.R.D. 276, 278 (D. Md. 2012) ("The party moving for a protective order bears the burden of establishing good cause" under Rule 26(c)(1)); *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010) ("[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion."). District courts have "broad discretion" to manage discovery and make discovery rulings. *See Smith v.*

*Devine*, 126 F.4th 331, 342 (4th Cir. 2025). "Given this wide latitude in controlling discovery, a court's rulings will not be overturned absent a showing of clear abuse of discretion." *Id.* (internal quotation marks omitted).

### III. Background

The parties and the Court are familiar with this case's procedural history. *See generally Zenith Quest Corp.*, 2023 WL 5019525, at \*1–3. In August 2023, the District Court held that MKE's Complaint plausibly alleges that Zenith and the Doe Defendants misappropriated certain categories of firearm-related technical and engineering information, which MKE owns and "has taken reasonable measures to keep . . . secret," and which "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, a person who can obtain economic value from the discourse or use of the information," 18 U.S.C. § 1839(3) (defining the term "trade secret"). *See generally Zenith Quest Corp.*, 2023 WL 5019525, at \*4–5 (denying Zenith's Rule 12(b)(6) motion to dismiss). In doing so, the Court rejected Zenith's argument that the Complaint must "sufficiently identify *a single document* relating to a specific trade secret" to state a claim for relief under the DTSA or VUTSA. *See id.* at \*4 (emphasis added) (noting that both statutes require the plaintiff to plausibly allege that the information at issue is a "trade secret"). Here,

> [t]he Complaint sufficiently pleads that the purported trade secrets contain both technical and engineering information. [Compl.] ¶¶ 57–63. The trade secrets include: "engineering drawings and three-dimension CAD drawings of the assembled firearm, component assemblies [which include] material specifications, manufacturing process specifications . . . machine tooling, gauging . . . [and] assembly instructions." *Id.*

*Id.* at \*4 (alterations in original) (quoting Compl. ¶ 58). MKE "alleges that Defendants took trade secrets relating to several specific [MKE-produced] weapons" listed by name in the Complaint. *See id.* (citing Compl. ¶ 164). "Additionally, the trade secrets include customer lists that guide

9

product development and pricing strategies," *id.*; *see* Compl. ¶¶ 71–74, 164 (factual allegations

related to MKE's customer lists). Zenith denies these allegations. *See generally* Answer ¶¶ 57–

63, 71–74, 164, ECF No. 101. It also asserts an affirmative defense that MKE's allegedly

confidential and proprietary "information is not subject to trade secret protection because the

information is generally known and readily available." *Id.* at 20.

IV. Discussion

Discovery started in the summer of 2023. The six discovery disputes now before the

Court fall into five categories: Waiver; Reasonable Particularity; Relevance; Zenith's RFPs; and

MKE's Requests for Text Messages.

A.      *Waiver: Zenith's Reasonable Particularity Objection to MKE's RFP Nos. 10–28*

Rule 34 governs requests for a party to produce documents and things "within the scope

of Rule 26(b)(1)," Fed. R. Civ. P. 34(a). *See Hall v. Sullivan*, 231 F.R.D. 468, 473 (D. Md. 2005).

"The party to whom the request is directed must respond in writing within 30 days after being

served." Fed. R. Civ. P. 34(b)(2)(A). "For each item or category, the response must either state

that inspection and related activities will be permitted as requested or state with specificity the

grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B); *see also*

Fed. R. Civ. P. 37(a)(3)–(4), (d). "An objection must state whether any responsive materials are

being withheld on the basis of that objection. An objection to part of a request must specify the

part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). The responding party must

allow inspection, or complete production, of the requested materials within a reasonable time.

Fed. R. Civ. P. 34(b)(2)(B); *see* Fed. R. Civ. P. 37(a)(3)(iv).

"[G]eneral, boilerplate objections 'to the extent' they apply to [an opponent's] discovery

requests" do not satisfy Rule 34(b)'s specificity requirement. *Patrick*, 297 F.R.D. at 256. "Any

10

ground not stated [with particularity] in a timely objection is waived unless the court, for good

cause, excuses the failure," Fed. R. Civ. P. 33(b)(4). *See Hall*, 231 F.R.D. at 473–75; Fed. R. Civ.

P. 34(b), advisory committee's note to 1970 amendment (instructing that the "procedure provided

in Rule 34 is essentially the same as that in Rule 33, as amended"). Factors relevant to the good-

cause determination include:

> (1) the length of the delay or failure to particularize; (2) the reason for the delay or
> failure to particularize; (3) whether there was any dilatory or bad faith action on
> the part of the party that failed to raise the objection properly; (4) whether the
> party seeking discovery has been prejudiced by the failure; (5) whether the
> document production request was properly framed and not excessively
> burdensome; and (6) whether waiver would impose an excessively harsh result on
> the defaulting party.

*Hall*, 231 F.R.D. at 474 (footnotes omitted). "[A] court has broad discretion to decide on a case

by case whether waiver is appropriate." *Id.*; *see Drexel Heritage Furnishings, Inc. v. Furniture*

*USA, Inc.*, 200 F.R.D. 255, 259 (M.D.N.C. 2001).

*

MKE served its first set of RFPs (Nos. 1–39) on Zenith in June 2023. *See generally* Pl.'s

Mot. Ex. 1, at 2–13, ECF No. 116-1. According to MKE, "[t]he documents requested therein

encompass information primarily relating to the design, development, and manufacture" of

Zenith's allegedly "infringing weapons—that is, information going to the heart of MKE's

claims." Pl.'s Mot. & Br. in Supp. 8. Several RFPs seek materials that are related in some way to

"the MKE Information and/or other trade secret or confidential information of MKE." *See, e.g.*,

Pl.'s Mot. Ex. 1, ¶¶ 10–12, 14–19. "The term 'MKE Information'"[4] means:

> without limitation, the *type of information* contained in each Technical Data
> Package ("TDP") of an MKE firearm, including but not limited to designs,
> engineering drawings, blueprints, computer-aided design ("CAD") files, material

---

[4] MKE's first set of RFPs does not define the catchall phrase "and/or other trade secret or confidential
information of MKE." Pl.'s Mot. Ex. 1, ¶¶ 10–12, 14, 16–17, 19.

> and/or process specifications and standards, machine tooling, gauging, and
> tolerances for each component, assembly instructions and tolerances, performance
> requirements, and quality control measures; the molds developed from and in
> accordance with the TDPs; documents identifying MKE's customers, including
> MKE customer lists and the information contained in customer lists maintained
> by MKE; and/or documents identifying MKE's vendors including MKE vendor
> lists and the information contained in vendor lists maintained by MKE.

*Id.* ¶ 8 (emphasis added); *accord* Pl.'s Mot. & Br. in Supp. 13 (quoting the same); Pl.'s Br. in

Opp'n 8–9 (quoting the same). The Complaint and Mr. Akkaynak's declaration define MKE's

allegedly misappropriated "trade secrets" using substantially the same terms as the "MKE

Information." Pl.'s Mot. & Br. in Supp. 12–13 (citing Compl. ¶¶ 57–58, 68; Akkaynak Decl. ¶ 7,

11; Pl.'s Mot. Ex. 1, ¶ 8).

    In August 2023, Zenith generally "objected to each request" in MKE's first set of RFPs

"to the extent it seeks documents containing or constituting trade secrets or other confidential or

proprietary business information of Zenith." Pl.'s Mot. Ex. 2, at 3, ECF No. 116-3. Zenith stated

that it "will not produce any such documents in the absence of an appropriate protective order in

the case." *Id.* It did not mention MKE's failure to "adequately identif[y] the alleged trade secrets

at issue in this litigation," Pl.'s Mot. Ex. 7, Letter from D. Washington to J. Ruskusky 3 (Feb. 8,

2024), ECF No. 116-7. Zenith also specifically objected to RFP Nos. 24–25 because they sought

"documents that contain [Zenith's] proprietary information," Pl.'s Mot. Ex. 2, at 13, but it did not

state whether any responsive documents were being withheld on the basis of this objection, Fed.

R. Civ. P. 34(b)(2)(C). Zenith did not mention its "trade secrets" or "other confidential" business

information. Pl.'s Mot. Ex. 2, at 13. Now, Zenith "object[s] to producing [its] own trade secret,

confidential, or proprietary information *until* MKE has adequately identified the trade secrets at

issue in this litigation," Pl.'s Mot. Ex. 7, at 3 (emphasis added). It raised this objection for the

first time in its February 8, 2024 deficiency letter. *See id.* at 2–3. By not asserting its objection

within the time required by Rule 34, Zenith waived its "reasonable particularity" objection with

respect to MKE's RFP Nos. 10–28, as applicable.[5] *Cf. Drexel Heritage Furnishings*, 200 F.R.D. at 259 (defendants waived objection to producing confidential supplier lists because they "simply did not raise any objection based on confidentially in their discovery responses").

Zenith does not explain why it waited until February 2024 to raise this objection. *See* Defs.' Br. in Opp'n 9. That said, Zenith did not act in bad faith, *Hall*, 231 F.R.D. at 474, and there is no indication that its initial failure to raise the objection was "part of a larger calculated strategy of noncompliance," *Drexel Heritage Furnishings*, 200 F.R.D. at 259. On the contrary, Zenith timely responded to all of MKE's first set of RFPs concerning "the MKE Information," and it produced documents responsive to many of those requests. *See*, *e.g.*, Pl.'s Mot. Ex. 2, at 7–11; *Drexel Heritage Furnishings*, 200 F.R.D. at 259 (finding good cause to excuse waiver where defendant's responses "were timely made" and "[t]here was no prior history of delay").

Moreover, MKE's primary concern is that Zenith is withholding "*any* TDPs, the contents thereof, molds, components, parts, or customer or vendor lists that *originated at MKE*." Pl.'s Br. in Opp'n 9–10; *see also* Pl.'s Mot. & Br. in Supp. 19 (seeking "any and all MKE technical data packages, portions thereof, and/or molds" within Zenith's possession, custody, or control). Zenith represents that it "has not withheld any *MKE Information* as a result of [its] objections." Defs.' Reply 7. Zenith searched for and produced "the documents and communications in its possession that *contain the MKE information*. Zenith has only withheld documents that constitute its own proprietary, trade secret information, such as drawings, stp files, and communications discussing

---

[5] Some of these RFPs do not require Zenith to produce its own trade secret or other confidential business information. *See, e.g.*, Pl.'s Mot. Ex. 2, at 7–11 (RFP Nos. 10–17, 19). The Court leaves it to the parties to determine which of MKE's RFPs actually seek the information Zenith is withholding on the basis of its untimely "reasonable particularity" objection. *See* Pl.'s Mot. & Br. in Supp. 2–3, 5–6, 9–10 (arguing that Zenith is withholding documents responsive to RFP Nos. 10–28, including "documents relating to the design of (and process of designing Zenith's competing firearms"); Defs.' Reply 7 (asserting that "Zenith has not withheld any *MKE Information* on the basis of Zenith's objections" and that it "has produced the documents and communications in its possession that contain MKE information").

design and process choices." *Id.* (emphasis added); *accord* Pl.'s Mot. Ex. 2, at 7–11 (Zenith's responses to MKE's RFPs seeking "the MKE Information"). While some of those documents likely do "go[] to the heart of MKE's claims," Pl.'s Mot. & Br. in Supp. 8, MKE does not suggest that Zenith's failure to raise a "reasonable particularity" objection in August 2023 harmed its ability to prepare its case, Pl.'s Br. in Opp'n 9–10; Pl.'s Reply 10–11. *See Drexel Heritage Furnishings*, 200 F.R.D. at 259 ("The Court should always take into account any resulting prejudice or lack thereof.").

Finally, Zenith persuasively argues that MKE's references to broad categories of the alleged trade secrets at issue in this case are too vague for Zenith to "discern the relevancy of any requested discovery to its [own] trade secrets," *Structural Pres. Sys., LLC v. Andrews*, Civ. No. 12-1850, 2013 WL 12244886, at *4 (D. Md. Dec. 17, 2013) ("*Structural Pres. Sys. I*"). *See generally* Defs.' Br. in Supp. 5–6, 11, 13, 18–20; Defs.' Reply 4, 7, 10; Defs.' Br. in Opp'n 1–2, 10. The Court will grant Zenith's motion for an order "protecting Zenith from disclosing its own proprietary and/or trade secret information until MKE has submitted a particularized list of [its] trade secrets, and limiting Zenith's disclosure to information that is relevant to the identified trade secrets," Defs.' Mot. 3, ¶ 3. Enforcing Zenith's waiver under these circumstances would "impose an excessively harsh result" on Zenith. *See Hall*, 231 F.R.D. at 474; *cf. IKON Office Sols. v. Konica Minolta Bus. Sols., U.S.A., Inc.*, No. 3:08cv539, 2009 WL 4429156, at *4 (W.D.N.C. Nov. 25, 2009) (granting defendant's motion for "a protective order so that it need not furnish information about its own trade secret and confidential proprietary information until after IKON describes with reasonable particularity the trade secrets it claims Defendants have misappropriated," and concluding that the defendant was justified in withholding its own information until IKON complied).

14

Accordingly, the Court excuses Zenith's initial failure to raise its reasonable particularity objection with respect to MKE's RFP Nos. 10–28, as applicable.

B.    *Reasonable Particularity*

The parties' primary disagreement is over whether MKE has produced enough information to identify with "reasonable particularity" its trade secrets MKE accuses Zenith of misappropriating. *See generally* Pl.'s Mot. & Br. in Supp. 1–15; Defs.' Br. in Opp'n 1–8; Defs.' Br. in Supp. 5–8, 12–14; Pl.'s Br. in Opp'n 1–11. MKE says that it has. It therefore seeks an order compelling Zenith to produce all documents and information responsive to MKE's RFP Nos. 10–28 and Interrogatory No. 23.[6] *See* Pl.'s Mot. & Br. in Supp. 1, 19; Fed. R. Civ. P. 37(a)(3)–(4). More specifically, MKE argues that its Complaint and Mr. Akkaynak's declaration contain all the details Zenith needs to know at this stage of the case.[7] *See* Pl.'s Mot. & Br. in

---

[6] MKE also seeks documents responsive to its RFP Nos. 40–46. Those requests are discussed in the *Relevance* section below.

[7] MKE also cites various materials produced in discovery that MKE believes "reveal Zenith's *intent* to misappropriate" MKE's trade secrets, Pl.'s Mot. & Br. in Supp. 3 (emphasis added), as well as "Zenith's *apparent use* of MKE information to develop Zenith's firearms and manufacturing processes," *id.* at 14 (emphasis added). *See generally id.* at 3–4, 14–15; Pl.'s Br. in Opp'n 2–5. They "include drawings of MKE fixtures," "videos taken within MKE's facilities," emails exchanged with Zenith's vendor in 2021, and an undated PowerPoint presentation. Pl.'s Mot. & Br. in Supp. 14–15; *see* Pl.'s Br. in Opp'n 2–5. MKE attached these materials as exhibits to its briefs. ECF Nos. 116-11, 116-12, 118-1 to 118-8 (sealed).

Evidence about a defendant's *intent* to misappropriate a plaintiff's trade secrets, or about "*how* such misappropriation occurred, . . . . focuses on the ultimate merits of a trade secret plaintiff's claim." *Structural Pres. Sys., LLC v. Andrews*, Civ. No. MJG-12-1850, 2014 WL 12738910, at *2 (D. Md. Mar. 26, 2014) (*Structural Pres. Sys. II*"); *cf. Zenith Quest Corp.*, 2023 WL 5019525, at *5 (noting that the DTSA and the VUTSA require a plaintiff to show that the defendant knew or had "reason to know that the trade secret was acquired by improper means"). Considering a merits question during a discovery dispute is generally improper. *Structural Pres. Sys. II*, 2014 WL 12738910, at *2; *accord* Pl.'s Reply 2, 6–8 (arguing the same). For now, the only question is whether MKE has identified the alleged trade secrets at issue with "reasonable particularity." *See Structural Pres. Sys. II*, 2014 WL 12738910, at *2. MKE's argument on this point relies upon its Complaint and Mr. Akkaynak's declaration. Pl.'s Mot. & Br. in Supp. 8, 12 (citing Compl. ¶¶ 57–81; Akkaynak Decl. ¶¶ 7, 11). Although MKE asserts that the discovery materials also "include MKE's confidential information," Pl.'s Br. in Opp'n 2–3, MKE has not identified any particular trade secret that it believes is described, reflected, or otherwise depicted in those materials. *See generally* Pl.'s Mot. & Br. in Supp. 7, 14; Pl.'s Br. in Opp'n 2–3. Accordingly, I am unable to consider the information in those discovery materials in resolving the parties' arguments. *See generally* Pl.'s Mot. & Br. in Supp. 14–15; Defs.' Br. in Opp'n 6–7, 10–12; Pl.'s Reply 6–8; Pl.'s Br. in Opp'n 2–5. If MKE

Supp. 8, 10–13 (citing Compl. ¶¶ 57–58, 68; Akkaynak Decl. ¶¶ 7, 11). Thus, MKE claims that

Zenith is trying to make MKE "*guess* each and every misappropriated item before Zenith is

required to turn it over." Pl.'s Br. in Opp'n 10; *see also id.* at 13; Pl.'s Reply 6, 11–12.

Conversely, Zenith claims that MKE wants Zenith to hand over its confidential and proprietary

materials "cover[ing] the entire design of the ZF-5 firearm and every drawing, design, molding,

and process, *without regard* to whether the particular component or process at issue is one that

bears any resemblance to any of MKE's alleged trade secrets." Defs.' Br. in Supp. 6 (emphasis

added); *see also id.* at 19 ("MKE wants Zenith to turn over proprietary documents relating to all

133 ZF-5 parts. This would include information on parts that have a completely different design

from any MKE firearm."); Defs.' Reply 4 ("At the same time that MKE argues that it is entitled

to all of Zenith's trade secrets (relevant or not), it is refusing to produce its own trade secrets

upon which its claims are entirely founded."). Defs.' Br. in Opp'n 1–2, 10 (arguing the same).

MKE does not disagree that its discovery requests might capture entirely irrelevant information.

*See generally* Pl.'s Mot. & Br. in Supp. 2–3, 6–8, 15, Pl.'s Reply 12–13; Pl.'s Br. in Opp'n 13–

14. It contends "Defendants must disclose Zenith's own designs and processes (with reasonable

confidentially protections) so that [MKE] can discover the full extent of Defendants'

misappropriation." Pl.'s Br. in Opp'n 14.

*

The Complaint describes MKE's trade secrets primarily in terms of the information in a

firearm's "associated Technical Data Package" or "TDP." Compl. ¶ 57 ("Firearms are generally

---

believes that Zenith misappropriated particular trade secret information contained in those materials—
such as specific drawings of MKE fixtures or recordings of specific confidential and proprietary
processes—then MKE must give Zenith a reasonably particular description of that information and where
it appears in the Bates-stamped material. *See, e.g.*, *Philips Med. Sys. Nederland B.V. v. TEC Holdings*, No.
3:20cv21, 2021 WL 1234596, at *5 (W.D.N.C. Mar. 31, 2021).

16

manufactured from an associated Technical Data Package"); *see id.* ¶¶ 57–59, 61–63, 66–69

(paragraphs containing the term "TDP," all in the context of describing "MKE's Confidential

Information and Trade Secrets"). TDP is "a term known in the [industry] to include the

information necessary to produce a given product." *See* Compl. ¶ 57; *accord* Pl.'s Mot. & Br. in

Supp. 12 (citing Compl. ¶ 57). "A given firearm TDP *may* include, but is not limited to," the

following *types* of information:

> engineering drawings and three-dimension CAD drawings of the assembled
> firearm, component assemblies, and of each individual component, material
> specifications, manufacturing process specifications and standards, and the
> machine tooling, gauging, and tolerances for each component, assembly
> instructions and tolerances of all assemblies and the complete assembly of the
> firearm, performance requirements, and quality control measures.

Compl. ¶ 58 (emphasis added); *accord* Pl.'s Mot. & Br. in Supp. 12 (quoting Compl. ¶ 58).

"MKE keeps its TDPs confidential and secret." Compl. ¶ 61. "MKE also uses molds developed

from and in accordance with the TDPs to make certain components of firearms. . . . Like the

TDPs, MKE keeps these molds confidential and secret." *Id.* ¶¶ 68–69. In 2021 or 2022, MKE

discovered that proprietary "molds for components, as well as product designs and blueprints

used to manufacture MKE firearms were missing from MKE factories." *Id.* ¶ 166; *see id.* ¶ 6.

Finally, MKE's trade secrets allegedly include detailed "customer lists" and "vendor lists." *See

id.* ¶¶ 70–81. MKE argues that these allegations satisfy the "reasonable particularity" standard

because the District Court held that MKE's Complaint stated a claim to relief that was plausible

on its face. Pl.'s Mot. & Br. in Supp. 1–2, 8, 10–13; Pl.'s Reply 2–3; *see also* Pl.'s Br. in Opp'n

12 ("The Court effectively determined as much when it denied Defendants' Motion to Dismiss

based on the same arguments Defendants make now.").

Mr. Akkaynak's declaration defines the "MKE Trade Secrets" as: "MKE's customer lists,

MKE's technology supplier lists, MKE's vendor lists, and molds that are used to make certain

MKE firearm components in accordance with TDP specifications," plus "the TDP for each MKE [W]eapon."[8] Akkaynak Decl. ¶ 11; *see id.* ¶ 7 ("MKE maintains and owns a Technical Data Package ('TDP') for each MKE Weapon as a trade secret."). "Each TDP *may* contain some or all of the following information":

- engineering drawings and three-dimension CAD drawings of the assembled firearm;
- component assemblies;
- engineering drawings and three-dimension CAD drawings of each individual component of the assembled firearm;
- material specifications;
- manufacturing process specifications and standards;
- the machine tooling, gauging, and tolerances for each component;
- assembly instructions and tolerances of all assemblies;
- the complete assembly of the firearm;
- performance requirements; and
- quality control measures.

*Id.* ¶ 7 (emphasis added); *accord* Pl.'s Mot. & Br. in Supp. 12 (citing Akkaynak Decl. ¶¶ 7, 11). Mr. Akkaynak's list of the types of information that a "TDP may contain" appears to have been copied (with minor, non-substantive alterations) directly from paragraph 58 of MKE's Complaint. *Compare* Akkaynak Decl. ¶ 7, *with* Compl. ¶ 58. His declaration contains no information identifying any aspect of "MKE's customer lists," "vendor lists," "and the information contained therein" that are MKE's trade secrets. *See* Akkaynak Decl. ¶¶ 9–11.

Zenith responds that MKE has identified only "broad categories" of trade secrets like TDPs, customer and vendor lists, "molds, product designs, blueprints, and schematics." Defs.' Br. in Supp. 5–6; *see also* Defs.' Reply 1 ("MKE's broad, generalized list of trade secrets are only described as technical data packages, molds, designs, blueprints, vendor lists, [and]

---

[8] Mr. Akkaynak's definition of the term "MKE Weapons" appears to have been copied (with minor alterations) directly from paragraph 164 of MKE's Complaint. *Compare id.* ¶ 4, *with* Compl. ¶ 164. It omits the Complaint's references to "MKE's MP5 machine gun" and "MKE's MG3 machine gun." Compl. ¶ 164; *see* Akkaynak Decl. ¶ 4.

customer lists—all of which are items generally used by virtually all companies involved in manufacturing, distribution and sales."). It has not identified *which* specific items or information MKE believes Zenith misappropriated. *See generally id.* at 5–7, 14, 18–20. For example, MKE's Complaint does not identify any particular TDP, or part of a TDP, for any MKE weapon(s) that MKE has reason to believe Zenith misappropriated. *See generally* Compl. ¶¶ 39–40, 57–69, 83–85, 166, 184. It contains no information at all identifying any MKE-developed "molds," *id.* ¶¶ 6, 68–70, 166; "product designs and production blue prints," *id.* ¶¶ 6, 166, 189–91; "schematics for weapons," *id.* ¶ 7, or "customer, supplier, and vendor lists," *id.* ¶¶ 71, 73–79, 184, that Zenith allegedly misappropriated. *See* Defs.' Br. in Supp. 5. It also does not identify any "similarities" between MKE's AP5 firearm and Zenith's allegedly infringing ZF-5 and/or ZF-5P firearms. *See id.* ¶¶ 63, 83, 85. It simply alleges that Zenith's new firearms "bore striking similarities to certain MKE firearms being sold in the United States, namely the MKE AP5." *Id.* ¶ 83. MKE also accuses Zenith of "misappropriating *other* of MKE's trade secrets" to "develop *other* tactical products" that are similar, "if not identical, to those of MKE's to improperly compete with MKE." *Id.* ¶ 9 (emphasis added). Its Complaint does not elaborate.

Zenith's Interrogatory Nos. 8, 11, 19, and 20 sought this information to fill specific gaps in MKE's Complaint. *See* Defs.' Mot. 1–2. MKE answered as follows:

> **Interrogatory No. 8**: Identify all molds for components, product designs, production blueprints, and schematics used to produce and manufacture the MKE firearms that you contend were missing from your factories, as referenced in Paragraph 166 of your Complaint.
>
> **Answer:** MKE refers Defendants to the items identified in MKE's Complaint (ECF No. 1) and to the November 2, 2022 declaration of Servet Akkaynak (ECF No. 3-1), and additionally states that MKE identified component molds, including multiple receiver molds, and other parts missing from its facilities, including cocking tubes, receivers, barrels, magazines, pistol grips, sights, triggers and other internal weapon components.

Defs.' Br. in Supp. Ex. G, at 7, ECF No. 117-10. MKE's Complaint does not allege that its trade

secrets include firearm "parts" like cocking tubes, sights, or triggers. *See* Defs.' Reply 2.

> **Interrogatory No. 11**: Identify the confidential, proprietary, and trade secret
> information stored on MKE's computer systems that was accessed, downloaded,
> printed, and/or copied without authorization, as referenced in Paragraph 159 of
> your Complaint.
>
> **Answer**: MKE identifies the documents produced herewith at MKE_0000061–65,
> MKE_0000441–504, and MKE_0000544–45 as containing responsive
> information. MKE incorporates those documents into this response.

Defs.' Br. in Supp. Ex. G, at 10.

> **Interrogatory No. 19**: Identify the confidential, proprietary, and trade secret
> information not otherwise identified in your Answers to Interrogatory Nos. 1–18
> that you contend was or is being misappropriated by Zenith and/or the John Doe
> Defendants.
>
> **Answer**: MKE further identifies the information belonging to MKE that is
> contained or referenced in the materials produced by non-party Couvillion, LLC,
> which non-party production is produced herewith under the Bates prefix
> "COUVILLION."

*Id.* at 15. Before this Court, MKE indicates that the COUVILLION production consists of

"nearly 10,000 documents" reflecting information that both MKE and Zenith likely claim as their

own trade secret. Pl.'s Br. in Opp'n 13 n.10; *see also id.* at 2–3; Pl.'s Mot. & Br. in Supp. 14–15.

> **Interrogatory No. 20**: For each trade secret you allege was or is being
> misappropriated by Zenith and/or the John Doe Defendants, identify which part of
> the Zenith Firearms the trade secret was or is being used to design, manufacture,
> or otherwise produce.

Defs.' Br. in Supp. Ex. F, at 7. The term "Zenith Firearms" means "the Zenith ZF-5 and the

Zenith ZF-5P." *Id.* at 6; *accord* Compl. ¶¶ 83–85.

> **Answer**: MKE responds that the requested information is within Defendants'
> possession and that Defendants still have not produced requested documents and
> information in their possession. For example, the materials produced by non-party
> Couvillion, LLC contain, for example, videos surreptitiously recorded by
> Defendants and/or their agents inside MKE's factory without permission, which
> recorded information appears to have been used by Defendants to develop their
> own manufacturing process and/or fixtures for their own competing firearms. In

> particular, the video produced at COUVILLION_0000002 depicts Former MKE
> Personnel, while inside Zenith's facility, videoconferencing with an individual
> recording MKE's equipment inside MKE's factory.

Defs.' Br. in Supp. Ex. G, at 16 (emphasis omitted).

Zenith argues that MKE's answers are inadequate because they refer to the same broad

categories of trade secrets alleged in the Complaint and Mr. Akkaynak's declaration. *See* Defs.'

Br. in Opp'n 5. In Zenith's view, MKE's alleged trade secrets "encompass every aspect of the

design, processing, and manufacture of dozens of firearms." *Id.* Zenith therefore seeks an order

compelling MKE to amend its answers to Interrogatories Nos. 8, 11, 19, and 20. *See id.*; Fed. R.

Civ. P. 37(a)(3)(iii). MKE bears the burden to explain why Zenith's motion should be denied.

*Kinetic Concepts*, 268 F.R.D. at 243.

In February 2024, MKE propounded Interrogatory 23, asking Zenith to "[i]dentify each

of the fixtures used during the manufacturing process for Zenith's ZF-series firearms, whether

currently or in the past, including the origin of such fixture." Pl.'s Mot. Ex. 5, at 5, ECF No. 116-

5. Zenith responded,

> [t]he manufacturing processes that Defendants employ constitute their own trade
> secret information, and Defendants will only disclose proprietary trade secret
> information that is relevant to this litigation after MKE has identified with
> reasonable particularity the trade secrets that MKE has a good faith basis to
> believe have been misappropriated by Defendants. As of the date of these
> responses, MKE has not identified any trade secrets with reasonable particularity
> and Defendants are unable to respond to this request at this time. Defendants
> further object that the term "fixtures" is ambiguous and undefined.

*Id.* (formatting altered). MKE argues that Zenith's "response to Interrogatory No. 23 is indicative

of its broader and unfounded refusal to produce information relating to the design, development,

and manufacture of its weapons." Pl.'s Mot. & Br. in Supp. 7. From MKE's perspective, Zenith's

position is "unfounded" because MKE has identified the alleged trade secrets with reasonable

particularity. *See generally id.* at 6–8, 10–15. It therefore seeks an order compelling Zenith to

answer Interrogatory No. 23. Fed. R. Civ. P. 37(a)(3)(iii). Zenith bears the burden of persuasion. *Kinetic Concepts*, 268 F.R.D. at 243.

Separately, Zenith seeks an order protecting "Zenith from disclosing its own propriety and/or trade secret information until MKE has submitted a particularized list of trade secrets, and limiting Zenith's disclosure to information that is relevant to the identified trade secrets." Defs.' Mot. 3; *see* Fed. R. Civ. P. 26(c)(1)(G). Zenith bears the burden to show good cause under Rule 26(c)(1). *Webb*, 283 F.R.D. at 278.

    *1.*    *The Legal Framework*

In trade-secret litigation, there is "growing trend" among federal district courts towards requiring a plaintiff to identify its alleged trade secrets at issue with "some level" of particularity either before or during merits discovery. *Structural Pres. Sys. I*, 2013 WL 12244886, at \*3 (collecting cases "requiring some level of pre-discovery identification of trade secrets"); *see, e.g.*, *Decision Insights, Inc. v. Sentia Grp., Inc.*, 311 F. App'x 586, 589–91 (4th Cir. 2009) (affirming magistrate judge's order requiring plaintiff to produce a "clear and express verified statement containing only those items which Plaintiff considers to be actual trade secrets and which Plaintiff has reasonable grounds to believe were misappropriated by Defendant" (emphasis omitted)); *Hempel v. Cydan Dev.*, Civ. No. 18-3404, 2020 WL 8167432, at \*1–2 (D. Md. June 3, 2020) (directing plaintiffs to supplement their interrogatory answers "so that all of the trade secrets at issue in this case are identified with reasonable particularity"). Such disclosure "allow[s] the Court and the parties to better determine the scope of discovery," gives the "defendant the means to challenge the alleged secrecy of the information at issue," prevents the plaintiff from "making overbroad secrecy claims encompassing vast categories of information," and "mak[es] discovery more efficient" by focusing on the alleged trade secrets

22

actually at issue in the litigation. *Structural Pres. Sys. I*, 2013 WL 12244886, at *4 (citations omitted). It also helps define the extent to which the defendant can be compelled to produce its own trade secrets to a direct competitor. *See, e.g.*, *IKON Office Sols.*, 2009 WL 4429156, at *4 ("A plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret[] before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets." (internal quotation marks omitted)). "It is also clear, however, that complete pre-discovery disclosure may in some cases impose undue burden on a trade secrets plaintiff. A plaintiff may have thousands of individual trade secrets, and prior to discovery their knowledge of which of these secrets has been misappropriated may be incomplete." *Structural Pres. Sys. I*, 2013 WL 12244886, at *4. Thus, the court "must perform a balancing act when determining the level of pre-discovery disclosure required." *Id.*

"The most commonly used 'reasonable particularity standard' is broadly defined and its application is fact specific." *Id.* "[A]t a minimum, 'reasonable particularity' requires that plaintiff disclose sufficient information to (1) put defendant on notice of the nature of the plaintiff's claims and (2) allow defendant to discern the relevancy of any requested discovery to its trade secrets." *Id.* The court may require more specific or detailed disclosures on a case-by-case basis. *See Structural Pres. Sys. II*, 2014 WL 12738910, at *1–4. "Reasonable particularity" is not necessarily the same as "facial plausibility." *See, e.g.*, *Heska Corp. v. Qorvo US, Inc.*, No. 1:19cv1108, 2020 WL 5821078, at *4 (M.D.N.C. Sept. 30, 2020) (noting that the DTSA does not "provide an express requirement that a plaintiff identify its trade secret with reasonable particularity to state a claim" that is plausible on its face); *Bonumose Biochem, LLC v. Zhang*, No. 3:17cv33, 2018 WL 10069553, at *6–8 (W.D. Va. May 21, 2018), *adopted*, 2018 WL

10068672 (W.D. Va. June 11, 2018). The fact that a plaintiff's trade secret misappropriation claim survives the defendant's Rule 12(b)(6) motion to dismiss means the plaintiff can "unlock the doors of discovery" into the defendant's alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Fed. R. Civ. P. 8(a), 12(b)(6)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). The court can always narrow the scope of permissible discovery by requiring the plaintiff to provide a "clear and express . . . statement containing only those items which [p]laintiff considers to be actual trade secrets and which [p]laintiff has reasonable grounds to believe were misappropriated by [d]efendant." *Decision Insights*, 311 F. App'x at 589–90 (emphasis omitted); *see, e.g.*, *Structural Pres. Sys. I*, 2013 WL 12244886, at *6 ("To narrow the scope of discovery, plaintiffs must make their identification particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade." (internal quotation marks omitted)).

In the Fourth Circuit, district courts examining the sufficiency of a plaintiff's description of its alleged trade secrets within the context of a discovery dispute have consistently identified three kinds of descriptions that typically do not satisfy the "reasonable particularity" standard's *minimum* requirements. *See, e.g.*, *Hempel*, 2020 WL 8167432, at *1–2; *Structural Pres. Sys. I*, 2013 WL 12244886, at *4–6. *First*, references to *categories* of information—such as "equipment and component designs and specifications; tolerances; formulas; customer lists . . . [and] manufacturing specifications"—are insufficient. *Morgardshammer, Inc. v. Dynamic Mill Servs. Corp.*, No. 3:09cv379, 2009 WL 10685154, at *2 (W.D.N.C. Nov. 19, 2009) (requiring plaintiff to further describe these alleged trade secrets); *see also Lwin Family Co. v. Aung Min Tung*, No. 3:11cv569, 2012 WL 11922875, at *1 (W.D.N.C. Oct. 11, 2012) (directing plaintiff to supplement its "generic laundry list of broad trade secrets categories"). Categorical descriptions

do not provide "sufficient detail to inform [d]efendants (or a finder of fact) of what [d]efendants are accused of misappropriating and to mount a defense." *Philips Med. Sys.*, 2021 WL 1234596, at *5; *cf. Aarow Elec. Sols. v. Tricore Sys., LLC*, Civ. No. JKB-22-2363, 2025 WL 660227, at *2 (D. Md. Feb. 28, 2025) (explaining that plaintiff's categorical descriptions of its allegedly misappropriated trade secrets would "simply not pass muster at the summary judgment stage" because the descriptions did not "sufficiently identify the purported trade secrets at issue").

*Second*, "a trade secret plaintiff does not identify its alleged trade secrets with 'reasonable particularity' by merely listing products which it claims *contain* trade secrets." *Structural Pres. Sys. II*, 2014 WL 12738910, at *2 (emphasis added). The "plaintiff must identify the trade secrets *themselves*." *Id.*; *see, e.g.*, *Silicon Knights, Inc. v. Epic Games*, No. 5:07cv275, 2008 WL 2414046, at *9 (E.D.N.C. June 13, 2008) (directing defendant/counterclaim plaintiff to "provid[e] a prose description of each feature of [the software] it contends is a trade secret and specifying the lines of code within specified files that embody the trade secret"). The level of specificity required depends on the facts presented in each case. *Structural Pres. Sys. I*, 2013 WL 12244886, at *4.

*Third*, the plaintiff's description "must be 'particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade.'" *Structural Pres. Sys. I*, 2013 WL 122448866, at *2 (quoting *Dow Chem. Canada, Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 346 (D. Del. 2012)); *see, e.g.*, *Decision Insights*, 311 F. App'x at 590 (affirming magistrate judge's order requiring plaintiff to "clearly differentiate between the material which is public knowledge from that material which is allegedly Plaintiff's trade secret, proprietary, or confidential material"); *Hempel*, 2020 WL 8167432, at *1. Requiring

this level of specificity allows the defendant to "challenge the alleged secrecy of the information at issue." *Structural Pres. Sys. I*, 2013 WL 12244886, at \*4.

    *2.    Discussion*

    MKE's Complaint and Mr. Akkaynak's declaration identify four categories of purported trade secrets: (i) unidentified TDPs for unspecified MKE firearms, and all information or drawings that "may" be contained therein; (ii) unspecified "molds used to manufacture components of [MKE] firearms, which molds have been developed in accordance with the TDPs"; (iii) unspecified physical "molds," "product designs[,] and production blue prints used to produce and manufacture MKE firearms [that] were missing from MKE factories"; and (iv) unspecified "MKE customer, supplier, and vendor lists."[9] *See* Pl.'s Mot. & Br. in Supp. 12 (citing Compl. ¶¶ 57–58, 68, 166; Akkaynak Decl. ¶¶ 7, 11). I agree that these broad categories do not satisfy the reasonable particularity standard in this case.

    **Technical Data Packages.** The Complaint describes "MKE's Confidential Information and Trade Secrets" primarily in terms of a generic firearm's "associated" TDP. Compl. ¶ 57. TDPs are not themselves trade secrets because they are "known in the [industry] to include the information necessary to produce a given product." *Id.*; *see* Defs.' Reply 1–2 (noting that "technical data packages" are among the "items generally used by virtually all companies involved in manufacturing"). Zenith represents that the TDP for H&K's original MP5 firearm is

---

[9] The Complaint arguably includes a fifth category encompassing "other of MKE's trade secrets" that Zenith is allegedly using to "develop[] other tactical products [that are] nearly, if not identical, to those of MKE's to improperly compete with MKE." Compl. ¶ 9. This description is too vague to satisfy the reasonable particularity standard. *Cf. Structural Pres. Sys. I*, 2013 WL 12244886, at \*4–5 (concluding that a complaint's "vague reference to 'other confidential business information'" failed to identify the allege trade secrets at issue with reasonable particularity). "If there is indeed other confidential information at issue here beyond the [four] specific areas noted above, it must be identified with particularity" before Zenith will be required to produce its own trade secret or other confidential and proprietary information relevant to the additional area(s). *See id.* at \*5.

available on the Internet.[10] Defs.' Br. in Supp. 5. Thus, the *types* of information that "[a] given

firearm TDP *may* include"—such as "engineering drawings . . . of the assembled firearm,"

"material specifications," "manufacturing process specifications and standards," "tolerances for

each component," "assembly instructions," and "performance requirements," Compl. ¶ 58

(emphasis added)—also are not reasonably identifiable trade secrets in this context. *See, e.g.*,

*Morgardshammer*, 2009 WL 10685154, at *2 (concluding the same where plaintiff's alleged

trade secrets were described only as unidentified "equipment and component designs and

specifications; tolerances; formulas; . . . [and] manufacturing specifications"); *Structural Pres.*

*Sys. I*, 2013 WL 12244886, at *7 (discussing plaintiffs' "Procedural Guides"); *Structural Pres.*

*Sys. II*, 2014 WL 12738910, at *4 (same).

     The magistrate judge's decisions in *Structural Preservations Systems v. Andrews*, Civ.

No. 12-1850 (D. Md.), help illustrate this point. There, Plaintiffs alleged that Defendants

misappropriated two "Procedural Guides." *Structural Pres. Sys. I*, 2013 WL 12244886, at *5

(citing one guide for "floor-tipping projects" and the other "for vault projects"). The complaint

explained that Plaintiffs "developed and maintain[] step-by-step procedural guides . . . for the

successful execution of [their] projects, which are unique to [Plaintiffs] and contain valuable,

confidential, and proprietary information regarding [Plaintiffs'] job procedures and

expectations." *Id*. (quotation marks omitted). It "identified two guides by name, and described

that each contains a step by step (18 steps in the case of the floor-tipping guide) process,

including flow charts, diagrams, and projected time-frames, to guide the project to completion."

---

[10] The Internet Archive hyperlink that Zenith included in its briefs no longer works. Defs.' Br. in Supp. 5
n.1; Defs.' Br. in Opp'n 6 n.5. Nonetheless, Mr. Kaya attests that "[d]uring the development of the ZF-5,
Zenith used publicly available H&K design drawings as the basis for the design." Decl. of Kutlay (Peter)
Kaya ¶ 6 (Apr. 5, 2024), ECF No. 117-3. MKE does not dispute that the TDP for H&K's original MP5
was publicly available before Zenith released its ZF-5 and ZF-5P firearms in 2021. *See* Pl.'s Br. in Opp'n
13; Pl.'s Reply 1–2.

*Id.* at *7. However, the complaint "failed to describe the process in detail . . . or identify the particular charts or diagrams that [Plaintiffs] believe[] were misappropriated." *Id.* Plaintiffs' description was nothing more than a "general reference to these guides," which was not enough to satisfy the "reasonable particularity" standard in that case. *See id.* The magistrate judge ordered Plaintiffs to "narrow this universe of information by specifying what aspect of their [Procedural Guides] they believe to be a trade secret misappropriated by defendants," *id.* at *6. *See id.* at *7.

Plaintiffs' supplemental disclosure identified the same "two Procedural Guides by name" and included a more detailed description of "many, but not all, of the steps and elements of these guides, such as flow charts, diagrams, procedural[] phases, and timelines." *Structural Pres. Sys. II*, 2014 WL 12738910, at *4. But, they still "failed to identify the particular charts, diagrams, procedural[] phases, or other proprietary elements that Plaintiffs believe are [the] trade secrets" at issue in the case. *See id.* "Plaintiffs' general description of the Procedural Guides themselves, rather than identifying and describing the *specific* allegedly misappropriated proprietary information, [was] insufficient." *Id.* (emphasis added).

Here, MKE alleges that TDPs are essentially procedural guides for making firearms. *See* Compl. ¶ 57. But, unlike Plaintiffs in *Structural Preservation Systems*, MKE has not identified any of its own TDPs by name. Its Complaint lists several types of information that *any* "given firearm TDP *may* include," Compl. ¶ 58 (emphasis added), and asserts that "MKE keeps *its TDPs* confidential and secret," *id.* ¶ 61 (emphasis added). It does not connect any of those TDPs to a specific MKE firearm—let alone to one that MKE actually accuses Zenith of stealing. *See* Compl. ¶¶ 83–85 (alleging that Zenith's ZF-5 and ZF-5P firearms "bore striking similarities" to MKE's AP5 firearm). Zenith persuasively argues that many of MKE's discovery "requests would

cover the entire design of the ZF-5 firearm and every drawing, design, molding, and process, without regard to whether the particular component or process at issue is one that bears any resemblance to any of MKE's alleged trade secrets."[11] Defs.' Br. in Supp. 6; *see also* Defs.' Br. in Opp'n 1–2, 5–6. Yet, MKE has not identified any MKE-owned TDP for any MKE-produced weapon—or any particular drawing, specification, manufacturing process standard, assembly instruction, tolerance, performance requirement, or quality control measure contained therein— that Zenith allegedly misappropriated. *See id.* Zenith is "therefore entirely in the dark as to what specific, unique aspects of [any TDP] they have allegedly misappropriated." *Structural Pres. Servs. I*, 2013 WL 12244886, at *5.

MKE must give Zenith a statement containing only those aspects of an identified TDP that MKE "considers to be actual trade secrets and which [it] has reasonable grounds to believe were misappropriated by" Zenith. *See Decision Insights*, 311 F. App'x at 589–90. MKE must make a good-faith effort to reasonably identify each allegedly confidential drawing, design, diagram, process, instruction, calculation, specification, tolerance, quality control measure, and/or other proprietary element that MKE believes Zenith misappropriated. *See Structural Pres. Sys. II*, 2014 WL 12738910, at *4; *Morgardshammer*, 2009 WL 10685154, at *2. Additionally, "[b]ecause it appears that some portion of [MKE's current] trade secret disclosure includes information that is publicly available or generally known," MKE's supplemental "disclosure must be specific as to which part of the [TDP] is protected as trade secret." *Hempel*, 2020 WL 8167432, at *1.

---

[11] The fact that Zenith could designate its production "Attorney's Eyes Only" under the existing protective order is beside the point. Pl.'s Mot. & Br. in Supp. 9 (citing ECF No. 91). MKE still is "not entitled to irrelevant information," *Ramaco Res. v. Fed. Ins. Co.*, No. 2:19cv703, 2020 WL 3547946, at *4 (S.D. W. Va. June 30, 2020). *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) (the court must limit the frequency or extent of discovery "otherwise allowed" by the rules if the court determines that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)).

**Molds Developed from TDPs**. The Complaint alleges that MKE's misappropriated trade secrets include "molds developed from and in accordance with the TDPs," which MKE uses "to make certain components of its firearms." *See* Compl. ¶ 68. This description is insufficient for the reasons explained above. MKE knows which of "its TDPs" were used to develop its "molds," and it should know which aspect(s) of those molds, if any, it reasonably believes to be a trade secret that Zenith allegedly misappropriated. *Structural Pres. Servs. I*, 2013 WL 12244886, at *2; *cf. Hempel*, 2020 WL 8167432, at *2 ("Plaintiffs do not need to conduct discovery on the existence of their own trade secrets. They already know the trade secrets that they possess."). MKE must give this information to Zenith. *Structural Pres. Servs. II*, 2014 WL 12738910, at *3.

**Physical Molds, Product Designs & Blueprints**. MKE's generic references to these categories of items are insufficient. *See Structural Pres. Sys. I*, 2013 WL 12244886, at *4, *6. Manufacturing molds, product designs, and blueprints are not themselves trade secrets because "all companies involved in manufacturing," Defs.' Reply 1, likely use some version of those items. *See Structural Pres. Sys. I*, 2013 WL 12244886, at *4, *6; *cf. Philips Med. Sys.*, 2021 WL 1234596, at *5 (crediting defendant's argument "that documents and software are not themselves trade secrets"). MKE's Complaint contains no information describing *which* of its allegedly confidential and proprietary "molds," "product designs," "product blueprints," or "schematics" MKE believes Zenith misappropriated in order to make its own competing firearms, *see* Compl. ¶¶ 6–7.[12] *Cf. Structural Pres. Sys. I*, 2013 WL 12244886, at *6 (plaintiffs' allegation that their trade secrets included "project tools" was insufficient because "there [was] no description of

---

[12] The Complaint also does not identify any specific "similarity" between Zenith's ZF-5 and ZF-5P firearms and MKE's allegedly superior AP5 firearm. *See* Compl. ¶¶ 83–85. It simply alleges that Zenith's two firearm models "bore striking similarities to certain MKE firearms being sold in the United States, namely the MKE AP5," *id.* ¶ 83, and that some of MKE's own weapons "have such precise tolerances and machining that they are incapable of reverse engineering schematics," *id.* ¶ 7.

what these tools are or how they work"); *Structural Pres. Servs. II*, 2014 WL 12738910, at *4

(plaintiffs' further description of the "project tools," which listed its alleged trade secrets to

include unspecified "videos, still images, spreadsheets, and 'other proprietary documents that

were created by Structural,'" was insufficient because it lacked any "specifically identified

'videos, video clips, still images, [or] diagrams'" that defendants allegedly misappropriated).

During discovery, MKE clarified that it "identified component molds, including multiple

receiver molds, and other parts missing from its factories, including cocking tubes, receivers,

barrels, magazines, pistol grips, sights, triggers, and other internal weapon components." Defs.'

Br. in Supp. Ex. G, at 7 (MKE's answer to Zenith's Interrogatory No. 8). MKE contends that

identifying "various *categories* of molds and components that were discovered to be missing

from its factories" is sufficient in this case.[13] Pl.'s Mot. & Br. in Supp. 3 (emphasis added); *see*

*generally id.* at 12–13, 15; Pl.'s Br. in Opp'n 8–10, 13–14; Pl.'s Reply 4–6. It argues that it

"should not be forced to guess each and every misappropriated item before Zenith is required to

turn it over." Pl.'s Br. in Opp'n 10 (emphasis omitted).

---

[13] The two unpublished, out-of-circuit decisions that MKE cites to support its position are easily
distinguishable. In *Bytemark, Inc. v. Xerox Corporation*, for instance, Xerox *did not* contend that
Bytemark's failure to identify its trade secrets with "reasonable particularity" actually prevented Xerox
from understanding the nature of Bytemark's misappropriation claims or determining the relevancy of
discovery requests. *See Bytemark, Inc. v. Xerox Corp.*, No. 17 Civ. 1803, 2022 WL 120980, at *5
(S.D.N.Y. Jan. 11, 2022) ("Defendants merely state, in a conclusory fashion, that 'continued disputes will
arise over Bytemark's failure to define its claims.'" (ellipsis omitted)). Zenith does make that argument in
this case. Moreover, Bytemark had repeatedly offered to give Xerox "*all* source code and confidential
information that form the basis of its trade secrets claims." *Id.* at *4 (emphasis added). MKE has not
offered to do that for Zenith in this case. In *Tripwire, Inc. v. UpGuard, Inc.*, the magistrate judge
concluded that UpGuard did not need additional information about Tripwire's alleged trade secrets to
determine if "*a Tripwire document* in their possession was relevant and ought to be produced
immediately." *Tripwire, Inc. v. UpGuard, Inc.* No. 3:17cv114, 2017 WL 8582354, at *2 (D. Or. Nov. 13,
2017) (emphasis added). Here, Zenith says that it already "produced the documents and communications
in its possession that *contain MKE information*." Defs.' Reply 7 (emphasis added). Zenith is still trying to
determine which of *its own* trade secrets it must produce to MKE because they "are actually subject to a
good-faith claim of misappropriation." Defs.' Br. in Supp. 6.

District courts within the Fourth Circuit have rejected similar arguments that a plaintiff satisfies the reasonable particularity standard merely by "describing discrete *categories* of information" encompassing its allegedly misappropriated trade secrets. *Philips Med. Sys.*, 2021 WL 1234596, at *5 (internal quotation marks omitted). Instead, the plaintiff "must identify *what information* within each . . . category is a misappropriated trade secret." *Id.* Applying this principle to a tangible item like a physical mold or blueprint means MKE must at least identify *which* item—or aspect of the item—is a misappropriated trade secret. Without this identification, "it is unclear how many [molds MKE is] describing, or how they differ from one another." *Cf. Structural Pres. Sys. I*, 2013 WL 12244886, at *6 (explaining that plaintiffs' "description of 'project tools,'" which gave only "a detailed description of the *purpose* of the tools," was insufficient because there was no information about "what these tools are," "how they work," "how many 'tools' plaintiffs are describing, or how they differ from one another"). MKE also does not say which of its own firearms are manufactured using any of the missing physical molds, product designs, or blueprints. *See* Defs.' Br. in Supp. 19 ("MKE has not identified which, if any, of its component designs constitute trade secrets, nor has it identified which parts are manufactured or processed using trade secret information.").

Accordingly, in identifying "what these [molds] are or how they work," MKE must (1) clarify how many molds, product designs, and blueprints are at issue; (2) describe how each item differs from other items within the same category; and (3) "define the unique and proprietary" ways in which MKE uses each item to manufacture its own firearms. *Cf. Structural Pres. Sys. I*, 2013 WL 12244886, at *6 (directing plaintiffs "to clarify how many 'project tools' are at issue, describe how these tools differ, and define the unique and proprietary process they use to further their stated goals"). On the third point, MKE's description must be specific enough for Zenith to

32

distinguish between those aspects or components of the items that are allegedly MKE's trade secrets and "those which are generally known or available to others competing in the field/industry."[14] *Structural Pres. Sys. I*, 2013 WL 122448866, at *5 (quotation marks omitted); *see also Hempel*, 2020 WL 8167432, at *1. This will allow Zenith "to challenge the alleged secrecy of the information [or item] at issue" on summary judgment or at trial. *See Structural Pres. Sys. I*, 2013 WL 12244886, at *4. It also will protect Zenith from having to give a direct competitor its own confidential and proprietary "information on parts that have a completely different design from any MKE firearm," as that information would "not [be] relevant to the trade secrets claimed by MKE," Defs.' Br. in Supp. 19. *See, e.g.*, *IKON Office Sols.*, 2009 WL 4429156, at *4 (granting defendant's motion for "a protective order so that it need not furnish information about its own trade secret and confidential proprietary information until after IKON describes with reasonable particularity the trade secrets it claims Defendants have misappropriated," and concluding the defendant was justified in withholding production of this information until IKON complied).

**MKE's customer, supplier, and vendor lists.** These broad, categorical descriptions of MKE's alleged trade secrets are also too general to satisfy the reasonable particularity standard in this case. *See, e.g.*, *Philips Med. Sys.*, 2021 WL 1234596, at *5; *Morgardshammer*, 2009 WL 10685154, at *2; *IKON Office Sols.*, 2009 WL 4429156, at *5. The parties here "are direct competitors," and requiring Zenith to disclose *all* of its "customer and supplier lists" could harm Zenith's business while giving MKE an unfair competitive advantage. *See Morgardshammer*, 2009 WL 10685154, at *2; *IKON Office Sols.*, 2009 WL 4429156, at *5. Accordingly, MKE

---

[14] *See, e.g.*, Defs.' Br. in Supp. 14 ("MKE has not identified any designs, methods, processes, or any type of information that is unique to its firearms, rather than derived from the H&K firearms."); Defs.' Br. in Opp'n 8 ("Zenith does not know what modifications, if any, MKE has made to the H&K designs and processes.").

"must identify *what information* within each document and category is a misappropriated trade secret, and where the information appears in the documents." *Philips Med. Sys.*, 2021 WL 1234596, at *5. It should "differentiate between what information or which components of the [lists] are allegedly a 'trade secret' and those which are generally known or available to others competing in the field/industry." *Structural Pres. Servs. I*, 2013 WL 12244886, at *6 (other quotation marks omitted). "While it is difficult to predict what form this may take," *id.*, MKE should describe the list, providing a title, timeframe, "detailed" information that MKE keeps on their "historical and current purchases and pricing" plans, Compl. ¶¶ 71–75, and other identifying information. *See, e.g.*, *Structural Pres. Servs. I*, 2013 WL 12244886, at *5 n.7 ("If plaintiffs wish to include customer lists among the trade secrets allegedly misappropriated, they must give a more specific description of the list at issue, including the relevant time-frame and other identifying details."). Further, if MKE reasonably believes that Zenith misappropriated its confidential business information about *specific* MKE customers, suppliers, or vendors "to improperly compete with MKE," *see* Compl. ¶ 8, then MKE should identify those parties by name. *See, e.g.*, *IKON Office Sols.*, 2009 WL 4429156, at *3 (explaining that the alleged trade secret at issue appeared to be "a large collection of sales/customer information" and that plaintiff had "refused to provide any underlying facts or to identify any customers who were allegedly solicited by" its former employee).

> 3.    *Conclusion*

Zenith has shown good cause to issue its requested protective order. Fed. R. Civ. P. 26(c)(1)(G). Requiring MKE to specifically "identify the allegedly misappropriated trade secrets will assist the Court in determining relevancy and the proper scope of discovery" based on the actual misappropriation claims and defenses presented in this action. *IKON Office Sols.*, 2009

WL 4429156, at *4; *see* Fed. R. Civ. P. 26(b)(1), advisory committee's note to 2000 amendment.

Further, "[i]t is appropriate to [clearly] identify these trade secrets at this stage . . . so that any

future dispositive motions will not include unnecessary arguments about matters not actually in

dispute." *Hempel*, 2020 WL 8167432, at *2.

The Court cannot dictate how specific MKE's supplemental descriptions should be. *Id.* at

*1. But, they "should not be so broad as to obscure the trade secrets that will *actually* be at issue

in this case, either by being overly inclusive or overly vague." *Id.* (emphasis added). They also

must be particular enough "to separate the trade secret from matters of general knowledge in the

trade or of special knowledge of persons skilled in the trade." *Structural Pres. Sys. I*, 2013 WL

12244886, at *6. For example, MKE should be able to list its own TDPs by name and identify

the particular designs, diagrams, processes, specifications, instructions, tolerances, component

assemblies, or other proprietary elements contained therein that are actually subject to a good-

faith claim of misappropriation in this case. *See Structural Pres. Sys. II*, 2014 WL 12738910, at

*4; *Morgardshammer*, 2009 WL 10685154, at *2. Similarly, if MKE believes that any drawing,

photograph, or communication attached as an exhibit to its briefing reflects MKE's allegedly

misappropriated trade secrets, then it must identify *what* information is actually at issue and

*where* the information appears in the exhibit. *See Philips Med. Sys.*, 2021 WL 1234596, at *5.

MKE should be able to provide a reasonably specific description of the particular "proprietary

equipment, designs, and blueprints" that MKE alleges were "stolen" from its factories and

delivered to Zenith. Compl. ¶ 6. "If subsequent discovery reveals additional [MKE] trade secrets

that may have been misappropriated, [MKE] may amend the list to identify them."

*Morgardshammer*, 2009 WL 10685154, at *3.

MKE's counsel will have **30 days** from the date of this Order to give Zenith's attorney "a particularized list of trade secrets that MKE has a good faith basis to believe have been misappropriated by Zenith." Defs.' Mot. 3, ¶ 1. Zenith sought this information in Interrogatory Nos. 8, 11, 19, and 20. MKE's initial answers were evasive and incomplete. *See* Fed. R. Civ. P. 37(a)(4). Accordingly, MKE must amend its answer to each interrogatory within **21 days** from the date of this Order. Fed. R. Civ. P. 33(b)(3). Zenith will have **21 days** from the date its attorney receives MKE's particularized list to fully answer MKE's Interrogatory No. 23, and to produce any additional relevant, nonprivileged material responsive to MKE's RFP Nos. 10–28, as applicable, and to MKE's RFP Nos. 40–41, as modified by this Order.

C.    *Relevance: MKE's RFP Nos. 40–46*

These RFPs "primarily relat[e] to the design, development, and manufacture of Zenith's ZF-series weapons—first the ZF-5 and now the ZF-56." Pl.'s Mot. & Br. in Supp. 15–16; *see* Pl.'s Mot. Ex. 3, at 4–7 (Zenith's responses and objections to MKE's second set of RFPs). RFP Nos. 40 and 41 seek "[a]ll communications and documents exchanged between Defendants" and various third parties "concerning, or in connection with the development or manufacture of, the ZF-5-series, the ZF-56, and any iterations or derivations thereof."[15] Pl.'s Mot. Ex. 3, at 4. Zenith specifically objected to producing "any documents relating to the ZF-56" on grounds that this "product is not relevant and beyond the scope of any issue or claim in this matter." *Id.* at 4–5. It agreed to search for and produce any responsive, non-privileged documents related to its "ZF-5-series" weapons. *See id.* Separately, RFP Nos. 42–46 seek documents relating only to the ZF-56

---

[15] MKE's first set of RFPs instruct that the "term 'ZF-5-series' refers to the MP-5 style firearms (including the ZF-5 and ZF-5P), parts, and accessories, advertised for sale and/or for pre-order on Defendants' website www.zenithfirearms.com." Pl.'s Mot. Ex. 1, at 7, ECF No. 116-1; *see generally id.* at 5–8 (definitions applicable to RFP Nos. 1–39, served in June 2023). Neither party produced a copy of the definitions applicable to RFP Nos. 40–46.

firearm. *See id.* at 5–7. Zenith objected to each request on grounds that its ZF-56 "is not relevant and beyond the scope of any issue or claim in this matter." *See id.* It did not "state whether any responsive materials [were] being withheld on the basis of this objection," Fed. R. Civ. P. 34(b)(2)(C). *See* Pl.'s Mot. Ex. 3, at 5–7. Mr. Kaya's declaration indicates that Zenith is withholding responsive documents related to the design, development, and manufacturing process for its ZF-56 firearm. *See* K. Kaya Decl. ¶¶ 9–10.

"The burden is on the party resisting discovery to explain specifically why its objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules." *Desrosiers v. MAG Indus. Auto. Sys., LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009). Under Rule 26(b)(1), relevance turns on whether the information sought logically relates to a "specific claim or defense alleged in the pleadings." *United Oil Co.*, 227 F.R.D. at 416 (citing Rule 26(b)(1), advisory committee's note to 2000 amendment); *see In re: Am. Med. Sys.*, 2016 WL 3077904, at *4 ("Certainly, information is relevant if it logically relates to a party's claim or defense."). This "does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact." *United Oil Co.*, 227 F.R.D. at 416 (quotation marks omitted). Instead, "the determination whether such information is discoverable because it is relevant to the [existing] claims and defenses depends on the circumstances of the pending action." *See* Rule 26(b)(1), advisory committee's note to 2000 amendment (explaining that the court "has the authority to confine discovery to the claims and defenses asserted in the pleadings" and that parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings").

Zenith argues that RFP Nos. 40–46 seek irrelevant information because MKE's "Complaint contains no references to the ZF-56" and "trade secrets related to that firearm have

not been plead[ed] at all." Defs.' Br. in Opp'n 8. MKE explains that it could not have pleaded

facts about the ZF-56 because Zenith had not announced the product when MKE filed this

lawsuit in November 2022. *See* Pl.'s Reply Br. 9. Zenith introduced the ZF-56 on its website

sometime after that. Pl.'s Mot. & Br. in Supp. 16 & n.7 (citing www.zenithfirearms.com/zf-56).

The product still had "not yet been released to the market" as of April 2024. *See id.* at 16. Citing

Zenith's "description of it," however, MKE asserts that the ZF-56 "appears to be based on the

same roller-delayed technology as MKE's AP5 and Zenith's ZF-5." *Id.*; *see also* Pl.'s Reply 9

("As Zenith admits (and advertises), the ZF-56 is based on the same roller-delayed blowback

system as MKE's AP5 and Zenith's ZF-5."). Thus, MKE contends that the ZF-56 is "within the

allegations of [its] Complaint." *Id.* (citing Compl. ¶¶ 85, 164). Zenith responds that "[n]either the

term ZF-56, nor the term 'roller-delayed technology' appear anywhere in MKE's complaint."

Defs.' Br. in Opp'n 2. MKE may seek leave "to amend its Complaint to add allegations related to

the ZF-56," but it cannot "use the discovery process to expand its pleadings." *Id.* at 12.

    Zenith has the better position. MKE's trade-secret misappropriation claims are based on

its allegations that, "[i]n or around early 2021, Zenith began selling [two] Zenith-manufactured

firearms, the 'ZF-5' and 'ZF-5P,' that bore striking similarities to certain MKE firearms being

sold in the United States, namely the MKE AP5." Compl. ¶ 83. MKE's Complaint does not

identify any specific "similarity of Zenith's ZF-5 and ZF-5P to MKE's AP5," *id.* ¶ 85, and it

contains no indication that the weapons are all "based on the same roller-delayed blowback

technology," Pl.'s Reply 9; *see generally* Compl. ¶¶ 9, 83, 85, 164, 167. *Cf. United Oil Co.*, 227

F.R.D. at 416 (in a case alleging that defendant's chemical product caused insured's liver disease,

allowing plaintiff to discover information about two "chemical constituents not mentioned in the

complaint" that were known to be liver toxicants, but denying discovery on relevance grounds

into a third chemical because there was no "indicat[ion] that this ingredient is a liver toxicant"). The term "roller-delayed" appears nowhere in MKE's Complaint or Mr. Akkaynak's declaration, let alone in those documents' substantively identical descriptions of MKE's "Trade Secrets." *See generally* Compl. ¶¶ 56–81; Akkaynak Decl. ¶¶ 5–11.

Moreover, the Complaint does not accuse Zenith of stealing MKE's trade secrets in order to design, develop, manufacture, or sell "the ZF-5-series . . . *and any iterations or derivations thereof*," Pl.'s Mot. Ex. 3, at 4 (emphasis added). *See* Compl. ¶¶ 83, 85, 164, 167. At most, it alleges that Zenith misappropriated such "information on several *MKE weapons*, including . . . MKE's G3 assault rifle *and its derivatives*, . . . MKE's HK33 assault rifle *and its derivatives*, MKE's MP5 machine gun, and MKE's MP3 machine gun." *Id.* ¶ 164 (emphasis added). The Complaint's "broad allegations" that Zenith misappropriated "'MKE's confidential, propriety, and trade secret information and [is] using MKE's property to manufacture *firearms* identical or nearly identical to those of MKE' with the intent of competing with MKE," *see* Pl.'s Reply 9 n.4 (quoting Compl. ¶ 164), likewise contains no facts describing how or why Zenith's "firearms" are "identical or nearly identical to those of MKE," Compl. ¶ 164. MKE's assertion in its brief, which is not supported by any allegation in the Complaint, that the ZF-56 "appears to be a dressed up version of the same weapon platform" as "MKE's AP5 and Zenith's ZF-5," Pl.'s Reply 9, does not give MKE license to discover information about every Zenith firearm that arguably resembles any MKE weapon. *Cf. Phillips N.A., LLC v. Probo Med.*, No. 2:21cv298, 2022 WL 17793491, at *3 (S.D. W. Va. Dec. 19, 2022) ("'Fishing expeditions' that exceed the boundaries of the complaint and are based purely on unsupported speculation are improper.").

Accordingly, Zenith has shown that the information related to its ZF-56 firearm is not relevant to the actual claims in this action. *See* Rule 26(b)(1), advisory committee's note to 2000

amendment. **No response to MKE's RFP Nos. 42–46 is required.** Within **21 days** after Zenith's

attorney receives MKE's list of particularized trade secrets, Zenith must supplement its

productions in response to MKE's RFP Nos. 40 and 41, as modified:

> RFP No. 40: All communications and documents exchanged between
> Defendants and Roy Couvillion, Couvillion, LLC, or Acadian Armaments
> concerning, or in connection with the development or manufacture of, the ZF-5-
> series~~, the ZF-56, and any iterations or derivations thereof~~.

> RFP No. 41: All communications and documents exchanged between
> Defendants and Virtex or PPI-Time Zero concerning, or in connection with the
> development or manufacture of, the ZF-5-series~~, the ZF-56, and any iterations or
> derivations thereof~~.

Pl.'s Mot. Ex. 3, at 4; *see* Fed. R. Civ. P. 26(c)(1)(D).

## D.    *Zenith's RFPs*

Zenith contends that MKE has failed to produce, or failed to respond that it would

produce, documents relevant to MKE's misappropriation claims and Zenith's defenses thereto, as

Zenith requested in at least twenty different RFPs. *See* Defs.' Br. in Supp. 9–10 (citing RFP Nos.

3, 5– 8, 11, 14–16, 18–20, 27–28, 43–44); *id.* at 15–17 (also citing RFP Nos. 36, 39–40, 47–51);

Fed. R. Civ. P. 37(a)(3)(iv). According to Zenith, these RFPs relate directly to the elements MKE

must prove to prevail on its

> claim for trade secret misappropriation: the information has (1) "independent
> economic value;" (2) is not "generally known or readily ascertainable by proper
> means;" (3) is "the subject of efforts that are reasonable under the circumstances
> to maintain its secrecy;" and (4) has been misappropriated by the Zenith [sic]
> through improper means.

Defs.' Br. in Supp. 15 (quoting *Synopsys, Inc. v. Risk Based Sec., Inc.*, 70 F.4th 459, 769 (4th Cir.

2023) (cleaned up)); *see id.* at 15–17 (explaining why specific RFPs are relevant to each element

of the claim). Several requests seek categories of documents and other items referenced in

MKE's Complaint or Mr. Akkaynak's declaration. *See id.* at 15–17 (citing Compl. ¶¶ 49, 52, 73,

79; Akkaynak Decl. ¶¶ 15, 21–23, 27–31, 33, 35–36); Defs.' Reply 4–5 (also citing Compl. ¶¶ 50, 53–54, 176–77, 184).

In response, MKE points out that it produced documents responsive to nine RFPs, Pl.'s Br. in Opp'n 14 (RFP Nos. 6, 14–15, 19–20, 27–28, 44), and it told Zenith that "it is not withholding any responsive documents returned by [ESI] searches" for six others, *see id.* at 14–15 (RFP Nos. 3, 7–8, 11, 18–19). MKE also agreed to search for and produce documents responsive to RFP Nos. 16 and 43 before Zenith filed its motion. *Id.* at 15. Thus, MKE contends that "there is nothing to compel." *Id.* Its brief does not address Zenith's RFP Nos. 5, 39–40, or 48–51. *See id.* at 14–15; Defs.' Reply 3–6. Zenith argues that MKE's cited documents do not respond to RFP Nos. 6, 27–28, or 44, and that MKE impermissibly narrowed the scope of RFP No. 14 by limiting its "production to non-disclosure agreements with U.S. entities." *See id.* at 4–5.[16] I agree.

**RFP No. 6** seeks "documents showing all security clearances issued by the Turkish Department of Defense to" Former MKE Personnel. Defs.' Br. in Supp. Ex. C, at 11, ECF No. 117-6. MKE produced "what appear to be criminal background checks of the Former MKE Personnel . . . conducted by local police departments, not the Turkish Department of Defense." Defs.' Br. in Supp. 4 (citation omitted). MKE's Complaint alleges that each Former MKE Personnel "must obtain" security clearances "from the Turkish Department of Defense" in order to work with "information concerning any and all aspects of MKE's weapons." Compl. ¶ 50; *see generally id.* ¶¶ 52–54, 94, 96, 103–56. If these allegations are true, then MKE should have information about Turkish DOD-issued security clearances in its possession, custody, or control. *See* Defs.' Br. in Supp. 16–17. MKE has not produced any "documents showing the issuance of

---

[16] Zenith's reply brief does not address MKE's explanations as to RFP Nos. 3, 7–8, 11, 15–16, 18–20, or 43. Accordingly, I assume these RFPs are no longer at issue.

Turkish Department of Defense security clearances." *Id.* at 4. Accordingly, its production for

RFP No. 6 is incomplete. Fed. R. Civ. P. 37(a)(4).

**RFP No. 5** seeks "all reports of inspection of [MKE] facilities by the Turkish Department

of Defense" since 2013. Defs.' Br. in Supp. Ex. C, at 10 (citing Compl. ¶ 49). MKE should have

these reports within its possession, custody, or control for the same reasons explained above. *See*

Defs.' Br. in Supp. 16–17 (citing Compl. ¶ 49); Defs.' Br. in Supp. C, at 10–11 (stating that MKE

will search for and produce the requested documents).

**RFP No. 14** seeks "all non-disclosure agreements with [MKE's] vendors that were in

effect from 2013 to the present and are associated with the MKE Firearms." Defs.' Br. in Supp.

Ex. A, at 8, ECF No. 117-4. The term "MKE Firearms" refers to the MKE firearms and weapon

groups listed in paragraph 164 of the Complaint. *See id.* at 6–7; Compl. ¶ 164. MKE responded

that it would search for and "produce documents sufficient to show the non-disclosure

agreements MKE enters *with vendors in the United States* in connection with" those firearms.

Defs.' Br. in Opp'n Ex. C, at 19 (emphasis added). It did not specifically object to producing

such agreements with vendors outside the United States, or state whether it was withholding any

responsive documents on the basis of this implicit objection. Fed. R. Civ. P. 34(b)(2)(C). I agree

MKE's limited production is incomplete. Fed. R. Civ. P. 37(a)(4); *cf. Doe v. Mast*, No. 3:22cv49,

2023 WL 8235244, at *5 (W.D. Va. Nov. 28, 2023) (explaining that the responding party cannot

unilaterally decide which requested materials are or are not relevant to its opponent's case).

The Complaint alleges that "MKE maintains non-disclosure agreements with its vendors"

to protect its confidential "information about the specifications of the equipment which it uses to

make its firearms." *See* Compl. ¶ 80. There is no indication that MKE shared the alleged trade

secrets at issue in this case *only* with its U.S.-based vendors. *See generally id.* ¶¶ 2, 76–80. In

fact, because MKE is a government-controlled Turkish company that allegedly "exports its military products to more than 40 countries," it is likely that MKE disclosed at least some of those trade secrets to its vendors outside the United States. *See id.* ¶¶ 2, 37–38. Non-disclosure agreements that MKE maintains with these vendors, *id.* ¶ 80, are relevant to whether MKE took reasonable efforts to maintain the secrecy of its alleged trade secrets at issue in this case. *See, e.g.*, *VibrantCare Rehahb., Inc. v. Deol*, No. 2:20cv791, 2022 WL 2392478, at *4 (E.D. Cal. July 1, 2022) (defendant's production of its non-disclosure agreements with customers, vendors, clients, and suppliers should be limited to the agreements relevant to "the confidential and trade secret information at issue in this case").

Zenith's RFP No. 14 seeks MKE's non-disclosure agreements with vendors that "are associated with the MKE Firearms" in effect since 2013. When MKE produces its list of particularized trade secrets, it must also produce the non-disclosure agreements it entered with any vendors, wherever located, that had or have access to MKE's alleged trade secrets at issue in this case. *See* Defs.' Br. in Opp'n Ex. C, at 19.

**RFP Nos. 27, 28 & 44** seek documents related to MKE's "policies" and "practices" regarding its trade-secret protection, Defs.' Br. in Supp. Ex. C, at 30–32, plus MKE's "corporate security policies and procedures in effect [since] 2016, *id.* Ex. H, at 13, ECF No. 117-11. MKE produced what appears to be "an MKE Weapons Factory Security Manual" that applies only to its weapon-manufacturing facilities. Defs.' Br. in Supp. 5; *see* Compl. ¶¶ 48–49, 52. MKE's Complaint alleges that it "undertakes *other* significant measures" to protect its trade secrets. Compl. ¶ 51 (emphasis added). Accordingly, MKE's productions to RFP Nos. 27, 28, and 44 are incomplete. Fed. R. Civ. P. 37(a)(4). MKE must produce any requested policies, practices, or procedures in addition to "facility-specific" security measures. Defs.' Reply 5.

**RFP Nos. 39–40** seek "all customer lists" and "all vendor and/or supplier of technology lists referenced in" paragraphs 176, 177, and 184 of the Complaint. Defs.' Br. in Supp. Ex. H, at 10–11; *see* Compl. ¶¶ 176–77, 184. MKE specifically objected that both requests (1) were overbroad because they sought "all [such] lists refenced, without limitation to information alleged to have been misappropriated by" Zenith; and (2) required MKE to produce "confidential, commercially sensitive, proprietary, and trade secret information." Defs.' Br. in Supp. Ex. H, at 10–11. It neither produced any responsive documents nor stated whether it was withholding such documents on the basis of these objections. *See id.*; Fed. R. Civ. P. 34(b)(2)(C).

MKE's objections are meritless. If Zenith's requests are overbroad, it is only because MKE's Complaint accuses Zenith of misappropriating MKE's confidential "customer lists," "vendor lists," and "supplier lists" without reasonably identifying any particular trade-secret information that MKE thinks Zenith stole. Moreover, MKE cannot in good faith withhold copies of the very lists it accuses Zenith of misappropriating on grounds that those lists contain "confidential, commercially sensitive, proprietary, and trade secret information," Defs.' Br. in Supp. Ex. H, at 10–11. *Cf. BriovaRx, LLC v. Johnson*, No. 3:13cv12049, 2014 WL 989206, at *4–5 (S.D. W. Va. Mar. 13, 2014) (granting defendants' request for "copies of the documents that Plaintiff accuses them of taking" in trade-secret misappropriation case). Accordingly, MKE failed to produce documents responsive to Zenith's RFP Nos. 39–40. *See* Fed. R. Civ. P. 37(a)(4).

**RFP Nos. 48–50** seek photographs, videos, or documents related to any surveillance that MKE conducted of Zenith's facilities in Virginia. *See* Defs.' Reply 6; Defs.' Br. in Supp. Ex. H, at 15–17. MKE raised several boilerplate objections to these requests, but it did not state whether it was withholding responsive documents based on any of those objections. Fed. R. Civ. P. 34(b)(2)(C). It also "fail[ed] to respond that inspection will be permitted . . . as requested under

44

Rule 34." Fed. R. Civ. P. 37(a)(3)(iv). During the parities' meet and confer, however, "counsel

for MKE represented that no surveillance had been conducted on Defendants by MKE." Defs.'

Reply 6. Contrary to Zenith's suggestion, Rule 34 does not necessarily require MKE to make

"such representations in written discovery responses," *id. See* Fed. R. Civ. P. 34(b)(2)(B).

Moreover, "the Court cannot compel [MKE] to produce documents that do not exist." *Connelly*

*v. Volkswagen Grp. of Am., Inc.* No. 1:19cv1487, 2023 WL 7285234, at *4 (E.D. Va. Nov. 3,

2023). If MKE has any materials responsive to Zenith's RFP Nos. 48–50 in its possession,

custody, or control, then MKE must produce them. Fed. R. Civ. P. 37(a)(3)(iv), (c)(1). Otherwise,

Zenith and the Court will take MKE at its word that "there is nothing to compel," Pl.'s Br. in

Opp'n 16. *See Penn Nat'l Mut. Cas. Ins. Co. v. Va. Elec. & Power Co.*, No. 2:20cv66, 2021 WL

6203177, at *6 (E.D.N.C. May 19, 2021); Fed. R. Civ. P. 37(c)(1).

**RFP No. 51** seeks "any and all documents related to or reflecting all assumptions made,

facts established, and conclusions reached by any internal investigation conducted by MKE or by

others into any issues of claims [*sic*] raised in [the] Complaint." Defs.' Br. in Supp. Ex. H, at 17;

*see generally* Compl. ¶¶ 85–86, 159, 161 (allegations related to MKE's internal investigation).

MKE specifically objected "to the request because it seeks production of documents protected by

the attorney-client privilege, the work product doctrine, and/or other applicable privileges or

doctrines." Defs.' Br. in Supp. Ex. H, at 17–18. It did not state whether it was withholding any

responsive documents based on those objections, Fed. R. Civ. P. 34(b)(2)(C), and it had not

produced a privilege log as of April 2024, *see* Defs.' Reply 6. MKE's response to RFP No. 51

"directs" Zenith to MKE's Complaint, ECF No. 1, Mr. Akkaynak's declaration, ECF No. 3-1,

and unidentified interrogatory answers "reflect[ing] non-privileged *information* responsive to

this request." Defs.' Br. in Supp. Ex. H, at 17 (emphasis added).

This response is evasive and incomplete. Fed. R. Civ. P. 37(a)(4). First, Zenith is entitled

to inspect the actual documents requested; MKE's self-serving summary of its own internal

investigation is not an adequate substitute. Fed. R. Civ. P. 34(a)(1), 37(a)(3)–(4); *cf. DE Techs.,*

*Inc. v. Dell, Inc.*, 238 F.R.D. 561, 566 (W.D. Va. 2006) (defendant's initial disclosure under Rule

26(a)(1) "did not relieve [defendant] of its obligation to actually produce the Documents in

response to specific discovery requests" under Rule 34). Second, the attorney-client "privilege

only protects disclosure of communications; it does not protect disclosure of the underlying facts

by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395

(1981). The same principle applies to the work-product doctrine, Fed. R. Civ. P. 26(b)(3). *See,*

*e.g.*, *In re Dominion Dental Servs. USA, Inc. Data Breach Litig.*, 429 F. Supp. 3d 190, 192–93

(E.D. Va. 2019). Finally, MKE's "conclusory statements" that RFP No. 51 seeks privileged or

protected materials cannot shield the requested documents from discovery. *Adair v. EQT Prod.*

*Co.*, 285 F.R.D. 376, 383 (W.D. Va. 2012). Accordingly, MKE must amend its non-response to

Zenith's RFP No. 51 and produce any non-privileged documents requested. If MKE withholds

any privileged documents, it must expressly claim the relevant privilege in response to each item

requested and include a privilege log with its response or production of any non-privileged

documents. *See* Fed. R. Civ. P. 26(b)(5), 34(b)(2)(B)–(C).

E.    *MKE's Requests for Text Messages*

Finally, MKE notes that Zenith admitted during discovery that "ten of the sixteen Former

MKE Personnel hired by Zenith were provided with mobile phones on Zenith's company T-

Mobile plan." Pl.'s Mot. & Br. in Supp. 18 (citing Pl.'s Mot. Ex. 4, at 9, ECF No. 116-4). MKE's

RFP Nos. 3–4 and 10–11 seek ESI likely to be found on these phones. *See id.* at 17–18. In April

2024, Zenith informed MKE that all ten company phones "were apparently returned to T-Mobile

at some unknown date after each of the ten former MKE employees bought replacement personal devices." *Id.* at 18. Zenith contends that it cannot produce ESI from the T-Mobile phones because the physical devices are no longer within its possession, custody, or control. *See id.* MKE does not challenge Zenith's assertion. Instead, it asked Zenith to explain "when the Zenith-issued devices were returned, and whether any related documents exist, including documents confirming that the phones were indeed returned to T-Mobile and are no longer in Defendants' possession." *Id.* at 19 (emphasis omitted).

In response, Hanri Kaya submitted a declaration attesting that Zenith used Verizon "[t]hroughout 2021 and most of 2022," and that "Zenith maintained company phones on the Verizon account" for ten Former MKE Personnel "[a]t various times in 2021 and 2022." Defs.' Br. in Opp'n Ex. 1, Hanri Kaya Decl. ¶¶ 9–10 (Apr. 18, 2024), ECF No. 120-1. "In November 2022, Zenith switched carriers to T-Mobile." *Id.* ¶ 11. Zenith made that decision "on or before November 7, 2022." *Id.* ¶ 12. It "did not transfer any of the [company] accounts for the Former MKE Personnel to T-Mobile." *Id.* ¶ 13. "All phones from Former MKE Personnel were returned to Verizon in or before November 2022." *Id.* ¶ 14. "Other than Mehmet Tokluoglu, no Former MKE Personnel has had a Zenith-issued mobile phone after November 2022." *Id.* ¶ 15. Mr. Tokluoglu was issued a phone on Zenith's T-Mobile account in early January 2024. *Id.* ¶ 16. For purposes of the motion to compel, the declaration adequately addresses the returned phones.

Zenith agreed to produce copies of responsive, nonprivileged WhatsApp messages from cell phones belonging to Mr. Kaya, Mrs. Kaya, Bahadir Harmanci, and Mehmet Tokluoglu. Defs.' Br. in Opp'n 13; *see also* Pl.'s Mot. & Br. in Supp. 19. On April 4, 2024, Zenith's attorney confirmed to MKE that Zenith was in the process of collecting and reviewing the messages for production. Pl.'s Mot. & Br. in Supp. 19. This is a time consuming process because many of the

messages are in Turkish. Defs.' Br. in Opp'n 13. If Zenith has not produced any responsive text

messages from these four people, it must do so within 21 days from the date of this Order.

### V. Conclusion & Order

For the reasons explained above, Zenith's motion to compel and for a protective order,

ECF No. 117, is hereby **GRANTED** in its entirety. MKE's motion to compel, ECF No. 116, is

**GRANTED in part** with respect to any responsive text messages within Zenith's possession,

custody, or control, and **DENIED without prejudice** in all other respects. Specifically:

- Within **21 days** from the date of this Order:
    - Zenith shall complete its production of all responsive, nonprivileged electronic messages from any phones belonging to Kutlay (Peter) Kaya, Hanri Kaya, Bahadir Hamanci, and/or Mehmet Tokluoglu.

- Within **21 days** from the date of this Order:
    - MKE's counsel shall give Zenith's attorney "a particularized list of trade secrets that MKE has a good faith basis to believe have been misappropriated by Zenith," Defs.' Mot. 3, ¶ 1;
    - MKE shall amend its answers to Zenith's Interrogatory Nos. 8, 11, 19, and 20; and
    - MKE shall complete its production of any nonprivileged documents responsive to Zenith's RFP Nos. 5–6, 14, 27–28, 39–40, and/or 48–51.

- Within **21 days** from the date Zenith's attorney receives MKE's particularized list:
    - Zenith shall answer MKE's Interrogatory No. 23 and complete its production of any nonprivileged documents responsive to MKE's RFP Nos. 10–28, as applicable; and
    - Zenith shall produce any nonprivileged documents responsive to MKE's RFP Nos. 40–41 as modified:
        - RFP No. 40: All communications and documents exchanged between Defendants and Roy Couvillion, Couvillion, LLC, or Acadian Armaments concerning, or in connection with the development or manufacture of, the ZF-5-series, the ZF-56, and any iterations or derivations thereof.
        - RFP No. 41: All communications and documents exchanged between Defendants and Virtex or PPI-Time Zero concerning, or in connection with the development or

manufacture of, the ZF-5-series, ~~the ZF-56, and any iterations or derivations thereof~~.

- Zenith is not required to produce any documents related solely to its forthcoming ZF-56 firearm, as requested in MKE's RFP Nos. 42–46.

- Each party will bear its own costs.

IT IS SO ORDERED.

ENTER: June 18, 2025

Joel C. Hoppe
United States Magistrate Judge